Arne JENSEN; James P. Harris; John W. Vona; Arthur A. Ochse, Jr., Plaintiffs,

v.

UNITED STATES of America; and John A. Knauss, Administrator, National Oceanic and Atmospheric Administration,[1] Defendants.

UNITED STATES of America, Plaintiff,

v.

The PROCEEDS OF the SALE OF 10,324 POUNDS OF ATLANTIC SEA SCALLOPS TO WIT: $39,747.40.

Civ. A. Nos. 86–4176(SSB), 86–4788(SSB), 87–0063(SSB), 87–0084(SSB), 87–3606(SSB), 86–5119(SSB), 86–5120(SSB), 86–5122(SSB) and 87–1205(SSB).

United States District Court, D. New Jersey.

July 20, 1990.

---

1. John A. Knauss succeeded Anthony J. Calio as Administrator of the National Oceanic and Atmospheric Administration. The court has sub-stituted him as the defendant in this lawsuit. *See* Fed.R.Civ.P. 25(d)(1).

See also, 857 F.2d 46.

Edward V. Cattell, Jr., Clark, Ladner, Fortenbaugh & Young, Haddonfield, N.J., for Jensen, et al.

Michael Chertoff, U.S. Atty. by Bette Uhrmacher, Asst. U.S. Atty., Trenton, N.J.,

Richard B. Stewart, Asst. Atty. Gen., James C. Kilbourne, Larry Bradfish, U.S. Dept. of Justice, Washington, D.C., for U.S.

## OPINION

BROTMAN, District Judge.

These nine suits arise from the government's seizure of Atlantic sea scallops for violations of regulations promulgated under the Magnuson Fishery Conservation and Management Act ("Act"), 16 U.S.C. §§ 1801–1882. Plaintiff fishermen brought five of the nine suits, consolidated under docket number 86–4176, challenging the constitutionality of the procedures used by the National Oceanic and Atmospheric Administration ("NOAA") for seizing scallops that allegedly violate regulations promulgated under the Act. The court will refer to these five actions as the "constitutional actions."

The government also brought four forfeiture proceedings in this court. These "forfeiture actions" are consolidated under docket number 86–5119. Each of the claimant-defendants in the forfeiture cases is a plaintiff in a constitutional action.[2]

An assortment of dispositive motions are pending before the court.[3] For the reasons stated herein, this court will deny the four motions for summary judgment filed by the plaintiffs in the constitutional actions consolidated under Civil No. 86–4176. The court also will deny the government's motions to dismiss the constitutional action of Leon Vona, Civil No. 86–4788, as moot, but will dismiss the action on the basis of *res judicata*. The court will deny the motion to dismiss the constitutional action of Jensen in Civil No. 86–4176, as moot. The court, however, will deny the government's cross-motion for summary judgment in the constitutional actions because plaintiffs have failed to meet their burden to come forward with evidence which, when considered in light of their burden of proof at trial, could be the basis for a jury finding in their favor. *See J.E. Mamiye & Sons, Inc. v. Fidelity Bank*, 813 F.2d 610, 618 (3d Cir.1987) (Becker, J., concurring) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986). The court will dismiss the constitutional actions with prejudice.

Additionally, the court will deny the four motions for summary judgment of the

---

2. By order of this court dated April 18, 1988, the court consolidated the constitutional actions under:

*Jensen v. United States*, Civ. No. 86–4176(SSB).
*Vona v. United States*, Civ. No. 86–4788(SSB);
*Peabody v. United States*, Civ. No. 87–0063(SSB);
*Vaud J. Inc. v. United States*, Civ. No. 87–0084(SSB);
*Rose v. United States*, Civ. No. 87–3603(SSB)).
Likewise, that order consolidated the forfeiture actions under:
*United States v. Proceeds of the Sale of 10,324 Pounds of Atlantic Sea Scallops to Wit: $39,747.40*, Civ. No. 86–5119(SSB) (John Vona).
*United States v. Proceeds of the Sale of 5,500 Pounds of Atlantic Sea Scallops to Wit: $19,005.00*, Civ. No. 86–5120(SSB) (Harris);
*United States v. Proceeds of the Sale of 6,204 Pounds of Atlantic Sea Scallops to Wit: $29,455.12*, Civ. No. 86–5122(SSB) (Ochse);
*United States v. Proceeds of the Sale of 7,377 Pounds of Atlantic Sea Scallops to Wit: $34,969.60*, Civ. No. 87–1205(SSB) (Vaud J. Inc.)).

3. **CONSTITUTIONAL ACTIONS**
 1. Motion for summary judgment of plaintiff Vaud J. Inc.
 2. Motion for summary judgment of plaintiffs Jensen, Harris, John Vona, & Ochse.

3. Motion for summary judgment of plaintiff Peabody.
4. Motion for summary judgment of plaintiff Rose.
5. Cross-motion of defendant USA for dismissal and/or summary judgment
 (a) for lack of subject matter jurisdiction as to plaintiffs Jensen, Leon Vona, and Peabody;
 (b) as duplicative of the forfeiture cases before this court as to plaintiffs Harris, Ochse, John Vona, and Vaud J. Inc.
6. Motion of defendant USA to dismiss Leon Vona's complaint as moot.
7. Motion of defendant USA to dismiss complaint of Jensen as moot.
**FORFEITURE ACTIONS**
8. Motion by claimant-defendant John Vona for summary judgment.
9. Motion by claimant-defendant Harris for summary judgment.
10. Motion by claimant-defendant Ochse for summary judgment.
11. Motion by claimant-defendant Vaud Inc. for summary judgment.
12. Cross-motion by plaintiff USA for summary judgment against all claimant-defendants.

claimant-defendants in the forfeiture actions and grant the government's cross-motion for summary judgment.

## I. FACTS AND PROCEDURE

The facts in each case are substantially undisputed.

### A. *Arne Jensen*

On August 18, 1986, Jensen was captain of the fishing vessel COURAGEOUS, which tied up at the Parascondolo fishing docks in Newport, Rhode Island. The vessel contained one hundred bags of scallops weighing 3,888 pounds. Agents of the National Marine Fisheries Service ("NMFS") boarded the vessel to inspect the scallops for compliance with regulations. The agents took no more than ten one-pound samples. Although during the six day voyage, the crew had shucked only those scallops whose shells were over 3½ inches high and had checked the scallop meat size by counting the number of meats in a sixteen ounce volumetric sample ("volumetric method"), the NMFS agents found that the scallops were below the prescribed weight. The individual scallop samples ranged from 35.89 scallop meats per pound ("MPP") to 50 MPP, with an average of 45.67 MPP. Regulations published by NMFS at 50 C.F.R. § 650.7(a) and (e) and 51 Fed.Reg. 24841 (July 9, 1986), which governed at the time, set the allowable average at 30 MPP. Because the scallops were too small, NMFS agents seized the entire catch.

Neither Jensen nor his crew knew that they could request custody of the scallops in exchange for posting a bond or other security. The NMFS agents did not advise Jensen of this right. The NMFS agents sold the scallops to Parascondolo Fish Dealership in Newport, Rhode Island, yielding proceeds of $16,135.20. NOAA initiated civil penalty proceedings when it issued a Notice of Violation and Assessment ("NOVA") to Jensen on November 11, 1986. In a hearing before an Administrative Law Judge ("ALJ") on June 17, 1987, the ALJ ordered Jensen to pay a civil fine of $2,500.00. The government also initiated a forfeiture action against Jensen in the United States District Court for the District of Rhode Island on December 31, 1986 to perfect title to the proceeds from sale of the scallops.

### B. *James Harris*

Harris was the captain of the fishing vessel ABRACADABRA on August 7, 1986. On that date, the crew was unloading its catch of 141 bags, or 5,500 pounds, of scallops at Cape May, New Jersey. Despite the crew's attempt to measure the scallops during the trip by the volumetric method, NMFS agents, taking fifteen one-pound samples, found that the samples ranged from 27.94 MPP to 56.18 MPP, with an average of 42.154 MPP. The scallops were seized and sold by NMFS agents, yielding proceeds of $19,005.00. Neither Harris nor his crew knew that they could request custody of the scallops in exchange for posting a bond or other security. The NMFS agents did not advise them of this right. NOAA initiated a civil penalty proceeding against Harris by issuing a NOVA to Harris on December 3, 1986. Harris settled the civil penalty action for $1500.00 by agreement dated June 17, 1987. The government previously had brought a forfeiture action in the United States District Court for the District of New Jersey on December 31, 1986 to perfect title to the proceeds from the sale of the scallops.

### C. *John Vona*

The same fate befell John Vona, the owner of the fishing vessel CRYSTAL ANN, when Captain Walter Hill brought the vessel to Cape May, New Jersey on July 15, 1986 and unloaded 258 bags of scallops weighing 10,324 pounds. Despite the crew's efforts to check compliance, twelve one-pound samples revealed meat counts ranging from 37.975 to 49.163 MPP, with an average of 43.8 MPP. NMFS agents seized and sold the entire catch of scallops for $39,747.40. NOAA issued a NOVA to Vona on November 20, 1986 to initiate civil penalty proceedings. The government also brought a forfeiture action in the United States District Court for the District of New Jersey on December 31, 1986 to per-

fect title to the proceeds from the sale of the scallops. Vona and Hill paid a combined civil penalty of $1,500.00 in settlement of the civil penalty proceedings on June 17, 1987.

### D. *Arthur Ochse, Jr.*

Ochse, the owner and captain of the trawler DIANNE & MAUREEN, moored the vessel at Point Pleasant Beach, New Jersey on September 16, 1986. NMFS agents contacted Ochse to announce their intention to inspect the 188 bags of scallops, weighing 6,204 pounds, on board the vessel. NMFS agents carried several bags to the nearby Coast Guard station where they inspected ten one-pound samples for compliance with the regulations. Additionally, Ochse tested two one-pound samples. The individual samples ranged from 30.8 to 47.5 MPP, with an average of 37.04 MPP. The agents seized and sold seventy percent of the catch yielding proceeds of $29,-455.12. NOAA issued a NOVA to Ochse on December 3, 1986 to initiate civil penalty proceedings. The government thereafter brought a forfeiture action in the United States District Court for the District of New Jersey on December 31, 1986. Arthur Ochse and Arthur Ochse, Jr. paid a combined fine of $3,900.00 in settlement of the civil penalty action on June 17, 1987.

### E. *Leon Vona*

On October 29, 1986, NMFS agents sampled scallops that had been unloaded in Chester, Pennsylvania from the fishing vessel BARBARA ANNE, owned by Leon Vona, Inc. The meat counts of the ten one-pound samples ranged from 47.08 to 61.38 and averaged 55.53 MPP. The agents seized and sold the scallops, yielding proceeds of $62,338.56. NOAA issued a NOVA to Vona on January 12, 1987 to initiate civil penalty proceedings. The government also brought a forfeiture action in the United States District Court for the Eastern District of Pennsylvania on March 27, 1987. Leon Vona and the vessel's captain, Patrick Flanigan, entered settlement agreements to resolve the administrative civil proceedings on June 17, 1987.

### F. *William Peabody*

On December 2, 1986, in Greenport, New York, NMFS agents followed and stopped a trailer truck that had been loaded with bags of scallops from the fishing vessel WILMA ILENE. An inspection revealed samples ranging from 49.88 to 59.08 MPP with an average of 53.94 MPP. The agents seized and sold the scallops. The proceeds of the sale were $51,665.28. NOAA initiated a civil penalty proceeding against William F. Peabody, William Vernon Peabody, and Michael Checklick by issuing a NOVA on March 11, 1987. Additionally, the government brought a forfeiture action to perfect title to the proceeds from sale of the scallops in the United States District Court for the Eastern District of New York on March 30, 1987. The fishermen agreed to pay a penalty to settle the civil penalty proceeding by agreement dated June 16, 1987.

### G. *Vaud J. Inc.*

In Cape May, New Jersey, on December 19, 1986, NMFS agents followed a truck filled with scallops that had been loaded from the fishing vessel VAUD J., owned by Keith Laudeman. The ten one-pound samples ranged from 48.15 to 62.85 MPP with an average of 56.453 MPP. The NMFS agents seized and sold the catch, yielding proceeds of $34,969.60. NOAA initiated civil penalty proceedings by issuance of a NOVA on March 11, 1987 to Keith Laudeman and Robert Potter, who subsequently paid civil penalties of $2,500.00 in settlement of the proceedings by agreement dated June 17, 1987. The government had previously brought a forfeiture proceeding in the United States District Court for the District of New Jersey on April 2, 1987.

In each case, the fishermen requested an administrative hearing at which the government submitted the scallop counts. Because the fishermen had no evidence to rebut the government's case, each entered a stipulation with the government that constitutes final agency action for the purpose of judicial review.

Jensen, Harris, John Vona, and Ochse filed an admiralty action in the United States District Court for the District of New Jersey on October 23, 1986. *Jensen v. United States*, Civ. No. 86–4176(SSB). The complaint asserts that the seizure of the scallops without a pre-deprivation hearing or a prompt post-deprivation hearing violated their rights as guaranteed by the due process clause of the fifth amendment of the United States Constitution. Additionally, the fishermen contend that the government violated their rights to due process by:

(1) failing to give notice to the fishermen of their right to apply for remission or mitigation of the forfeiture as soon as practicable, as required by 15 C.F.R. § 904.501; and

(2) failing to advise the fishermen that they could obtain release of the scallops upon posting the appropriate bond pursuant to 15 C.F.R. § 904.502, which failure prevented the fishermen from rebutting the regulatory presumption 50 C.F.R. § 650.21(a) that the catch as a whole is presumed to be not in compliance if any three one-pound samples fail to meet the 30 MPP requirement, or if the average of the samples, up to ten, is below 30 MPP.

The fishermen also assert that the presumption of 50 C.F.R. § 650.21(a) that the entire catch is not in compliance is arbitrary and capricious because it bears no relationship to reality. They argue that regulations that require inspection of scallops by weight rather than volume, the method the fishermen use during the trip, are arbitrary and capricious because fishermen at sea can not possibly check whether their catch complies using this method. The fishermen note that scallops shrink due to loss of moisture and, thus, scallops that complied with regulations at the time of harvest may not comply when the vessel

returns to port. Finally, these fishermen contend that the 30 MPP regulations for shucked scallops discriminates against full-time fishermen who shuck their catch at sea. Scallopers who do not shuck the scallops at sea are subject to 51 Fed.Reg. 24841, which permits scallops no smaller than 3½ inches in height; the fishermen contend that 3½ scallops are smaller than the 30 MPP standard permits. They claim there is no rational basis for the arbitrary distinction between scallops shucked at sea and those that return to port unshucked. Leon Vona filed an identical constitutional challenge in the District of New Jersey on December 11, 1986. *Vona v. United States*, Civ. No. 86–4788(SSB). Peabody filed his constitutional challenge in the District of New Jersey on January 7, 1987. *Peabody v. United States*, Civ. No. 87–0063(SSB).

As noted previously, on December 31, 1986, the government filed forfeiture actions against the proceeds from the sale of the catches from the vessels of John Vona, Harris, and Ochse in the United States District Court for the District of New Jersey to perfect the government's title in the proceeds. *United States v. Proceeds of the Sale of 10,324 Pounds of Atlantic Sea Scallops to Wit: $39,747.40*, Civ. No. 86–5119(SSB) (John Vona); *United States v. Proceeds of the Sale of 5,500 Pounds of Atlantic Sea Scallops to Wit: $19,005.00*, Civ. No. 86–5120(SSB) (Harris); *United States v. Proceeds of the Sale of 6,204 Pounds of Atlantic Sea Scallops to Wit: $29,455.12*, Civ. No. 86–5122(SSB) (Ochse). The government sought forfeiture of the proceeds from the sale of the scallops pursuant to 16 U.S.C. § 1860(a).[4]

The government brought similar forfeiture actions against Jensen in the District of Rhode Island on December 31, 1986; against Leon Vona in the Eastern District of Pennsylvania on March 27, 1987;

---

**4.** 16 U.S.C. 1860(a) provides:

Any fishing vessel (including its fishing gear, furniture, appurtenances, stores, and cargo) used, and any fish (or the fair market value thereof) taken or retained, in any manner, in connection with or as a result of the commission of any act prohibited by section 1857 of

this title ... shall be subject to forfeiture to the United States. All or part of such vessel may, and all such fish (or fair market value thereof) shall, be forfeited to the United States pursuant to a civil proceeding under this section.

*Id.*

against Peabody in the Eastern District of New York on March 30, 1987; and against Rose in the Eastern District of New York.[5]

On January 13, 1987, Vaud J. Inc. filed its constitutional challenge to the regulations in the District of New Jersey. *Vaud J. Inc. v. United States*, Civ. No. 87–0084(SSB). On April 2, 1987, the government brought a forfeiture proceeding against the proceeds from the sale of the catch from Vaud J. Inc.'s vessel in the United States District Court for the District of New Jersey. *United States v. Proceeds of the Sale of 7,377 Pounds of Atlantic Sea Scallops to Wit: $34,969.60*, Civ. No. 87–1205(SSB).

The government moved to dismiss the complaints in each of the constitutional actions.[6] In an opinion dated September 9, 1987, this court dismissed counts II and III in each of the constitutional actions for failure to exhaust administrative remedies. *Jensen v. United States*, Civ. No. 86–4176(SSB) (D.N.J. Sept. 9, 1987). The court rejected the government's argument that the constitutional actions should be dismissed in their entirety under the finality and exhaustion doctrines. The court held that the fishermen were not entitled to remission, so their lack of notice as to the availability of remission did not state a claim in the absence of an assertion of prejudice in the forfeiture action resulting from the lack of notice. *Id.* at 7 (citing *United States v. Von Neumann*, 474 U.S. 242, 106 S.Ct. 610, 88 L.Ed.2d 587 (1986)). The opinion also states that the fishermen "have no absolute entitlement to bonded release under the statute or regulation" because bonded release is a discretionary matter for the Secretary under 16 U.S.C. § 1680. *Id.* The court found that the issue of irrationality of the sampling procedure, 50 C.F.R. § 650.21(a), and the challenge to the methods of sampling were issues within the expertise of the agency to

which the exhaustion doctrine applied. *Id.* at 7–8. The court, therefore, dismissed counts II and III for failure to state a claim under Rule 12(b)(6) of the Federal Rules of Civil Procedure because the fishermen had not exhausted their administrative remedies with respect to these claims. In the four forfeiture actions, the court denied the government's motion to strike defendants' answers and permitted defendants to amend.

In June 1988, this court heard oral argument on the motions pending in both the constitutional and forfeiture cases. Counsel advised the court at that time that the United States District Court for the Eastern District of New York had also heard argument and would address the identical issues in two companion forfeiture cases. Believing that the Eastern District of New York's action on these cases was imminent, this court reserved opinion on the motions pending that court's decision. To date, no decision has been entered in the Eastern District of New York. The time has come to act on this overly ripe matter.

The cross-motions for summary judgment, *see supra* note 3, raise several issues. The fishermen argue that due process requires they be given notice of their right to reacquire the seized scallops by posting security so they may defend themselves in the administrative hearing and forfeiture case; that due process requires an immediate post-seizure, pre-sale judicial hearing when an application for bonded release is denied by the agency; and that the agency acted beyond its authority when it failed to give the fishermen a meaningful opportunity for judicial involvement in the bonding and sale decision.

The government argues that this court does not have subject matter jurisdiction over the constitutional claims of Jensen,

---

**5.** Each defendant in the forfeiture action was served on the following date:

| | |
|---|---|
| Jensen | March 27, 1987 |
| Harris | March 25, 1987 |
| J. Vona | March 25, 1987 |
| Ochse | March 25, 1987 |
| Vaud J. Inc. | May 5, 1987 |
| L. Vona | March 27, 1987 |
| Peabody | March 30, 1987 |

**6.** Rose had not yet filed his constitutional challenge to the regulations. *Rose v. United States*, Civ. No. 87–3603(SSB) (complaint filed Sept. 1, 1987).

Leon Vona, and Peabody.[7] The government notes that, in a forfeiture action, exclusive jurisdiction lies in the district court in the district in which the *res* is seized initially, even if the *res* is later moved to another district. The government argues that the exclusive jurisdiction of other district courts prevents this court from providing relief in plaintiffs' constitutional actions by returning the *res.*

The government also argues that the fishermen are barred from challenging the substantive provisions of the regulations under section 305(d) of the Magnuson Act. This section provides for judicial review of regulations promulgated by the Secretary only "if a petition for ... review is filed within 30 days after the date on which the regulations are promulgated." 16 U.S.C. § 1855(d). The final regulations at issue here were implemented on August 18, 1982. 47 Fed.Reg. 35992.

Finally, the government contends that plaintiffs Harris, John Vona, Ochse, and Vaud J. Inc. assert claims in their constitutional actions that are duplicative of their defenses in the forfeiture actions before this court; thus, the court should dismiss their constitutional complaints.

Since the June 1988 argument, the government has moved to dismiss plaintiff Jensen from his constitutional action. The basis for the government's motion was the Court of Appeals for the First Circuit's affirming the entry of a default judgment against Jensen in the companion forfeiture case brought in Rhode Island. The First Circuit's mandate was issued October 13, 1989 and the *res* of $16,135.20 was transferred to the United States. The government maintains that Jensen's constitutional action before this court is moot because this court can not issue relief and its opinion as to the constitutionality of the regulations would be merely advisory. Similarly, the government moved to dismiss Leon Vona's constitutional action as moot. The Eastern District of Pennsylvania recently decided the companion forfeiture case by granting summary judgment on the merits

for the government. *See infra* note 9. Leon Vona has instructed his attorney not to pursue the matter further. Vona suggests that the court dismiss the case on *res judicata* grounds.

## II. DISCUSSION

### A. *The Summary Judgment Standard*

The standard for granting summary judgment is a stringent one, but it is not insurmountable. A court may grant summary judgment only when the materials of record "show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c); *see Hersh v. Allen Prods. Co.*, 789 F.2d 230, 232 (3d Cir. 1986); *Lang v. New York Life Ins. Co.*, 721 F.2d 118, 119 (3d Cir.1983). In deciding whether there is a disputed issue of material fact the court must view all doubt in favor of the nonmoving party. *Meyer v. Riegel Prods. Corp.*, 720 F.2d 303, 307 n. 2 (3d Cir.1983), *cert. denied*, 465 U.S. 1091, 104 S.Ct. 2144, 79 L.Ed.2d 910 (1984); *Smith v. Pittsburgh Gage & Supply Co.*, 464 F.2d 870, 874 (3d Cir.1972). The threshold inquiry is whether there are "any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986).

Recent Supreme Court decisions mandate that "a motion for summary judgment must be granted unless the party opposing the motion can produce evidence which, when considered in light of that party's burden of proof at trial, could be the basis for a jury finding in that party's favor." *J.E. Mamiye & Sons, Inc. v. Fidelity Bank*, 813 F.2d 610, 618 (3d Cir.1987) (Becker, J., concurring) (citing *Anderson*, 477 U.S. 242, 106 S.Ct. 2505, and *Celotex Corp. v. Catrett*, 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986)). Moreover, once the moving party has carried its burden of establishing the absence of a genu-

---

**7.** This argument also applies to plaintiff Rose, whose companion forfeiture case is pending in the United States District Court for the Eastern District of New York.

ine issue of material fact, "its opponent must do more than simply show that there is some metaphysical doubt as to material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986). Thus, even if the movant's evidence is merely "colorable" or is "not significantly probative," the court may grant summary judgment. *Anderson*, 477 U.S. at 249–50, 106 S.Ct. at 2510–11.

### B. *The Magnuson Fishery Conservation and Management Act*

The Magnuson Fishery Conservation and Management Act establishes an exclusive economic zone ("EEZ") in the waters off the United States coastline, spanning from the outer limits of state waters to 200 nautical miles, in which most fish and shell fish are subject to the exclusive fishery management authority of the United States as administered by the Secretary of Commerce. 16 U.S.C. §§ 1812, 1813. The statute divides the EEZ into eight regions, each with its own fishery management council. The relevant council prepares a fishery management plan for each species or stock of fish or shellfish. Each council collects data on the state of the fishery and considers various means of conserving and regulating the harvest of resources as necessary. Such means include size limits, open and closed fishing seasons or geographic areas, and restrictions on the type of fishing gear used.

Proposed fishery management plans are offered for public comment. Hearings are held throughout the affected region to take public testimony. The Secretary then reviews the fishery management plan pursuant to 16 U.S.C. § 1854. After approval, the Secretary promulgates regulations necessary to carry out each plan. *Id.* § 1855(c). Judicial review of implementing regulations is permitted by petition filed within 30 days of promulgation of the regulation. *Id.* § 1855(d).

It is unlawful to ship, transport, offer for sale, sell, purchase, import, export, or have custody, control, or possession of any fish taken or retained in violation of the Act or any regulation promulgated under the Act. 16 U.S.C. § 1857. Any fishing vessel used or any fish taken or retained in violation of this provision is subject to forfeiture to the United States. *Id.* § 1860. An authorized officer may seize without a warrant any fish taken and retained in violation of the statute. *Id.* § 1861(b)(1)(A)(iv). The statute also provides:

Any fish seized under the statute may be sold, subject to the approval and direction of the appropriate court, for not less than the fair market value thereof. The proceeds of any such sale shall be deposited with such court pending the disposition of the matter involved.

*Id.* § 1860(d)(2). Any officer authorized to serve process *in rem* that is issued by a federal district court must stay the execution of such process or discharge any fish pursuant to such process upon receipt of a satisfactory bond or other security. *Id.* § 1860(d)(1).

The regulations governing the Atlantic Sea Scallops Fishery Management Plan, 50 C.F.R. Part 650, were originally promulgated on August 18, 1982. *See* 47 Fed. Reg. 35992. The Atlantic Sea Scallops Fishery Management Plan established a management plan which restricts the minimum size at harvest as a conservation measure and requires vessels fishing for Atlantic sea scallops to obtain a permit. Enforcement of the size at harvest measure is based on a comprehensive prohibition on the possession of nonconforming Atlantic sea scallops. The size standard is expressed in terms of "meats per pound," defined as the "number of scallop meats required to make one pound of meats. A meat count of thirty means that one pound of scallops contains thirty meats." 50 C.F.R. § 650.2. Smaller scallops yield a higher number of meats per pound. At the time of the seizures here, the regulatory standard was 30 meats per pound ("MPP").

Compliance and sampling procedures are defined at 50 C.F.R. § 650.21. The regulation provides that, for shucked scallop meats, as opposed to scallops brought ashore in the shell, compliance is determined by counting scallop meats sampled

at random from the total amount in possession. The NMFS agent shall take one-pound samples. The person in possession of the scallops may request that as many as ten one-pound samples be taken. *Id.*

At the time of the seizures here, the regulations provided that the catch did not comply with the regulations if the total number of meats in any three one-pound samples exceeded 30 MPP or if the average meat count for the entire sample group exceeded 30 MPP. *Id.* § 650.21(a). If the sample group fails to comply, the entire catch of scallops is presumed to be in violation and subject to forfeiture. *Id.;* 16 U.S.C. § 1860.

The regulations governing forfeiture provide that the NOAA must notify the owner or other party with an interest in the seized property of its seizure. 15 C.F.R. § 904.501. If personal notice is not given and the seizure is not made pursuant to a search warrant, the NOAA must, as soon as practicable following the seizure, mail notice of the seizure by registered or certified mail, return receipt requested, to the owner or consignee. *Id.* The notice must describe the seized property and state the time, place, and reasons for the seizure. *Id.* The notice must inform each interested party of his or her right to apply for remission or mitigation of the forfeiture. *Id.* The notice may be combined with a notice of the sale of perishable fish under 15 C.F.R. § 904.505. *Id.* § 904.501.

The administrator of NOAA may, in his or her sole discretion, release any seized property upon deposit of the full value of the property or such lesser amount as the administrator deems sufficient. *Id.* § 904.502. The amount is held by the NOAA or the court pending the outcome of the forfeiture proceedings. *Id.* The administrator may also accept a bond or other security for the seized fish and may attach appropriate conditions to the bond. *Id.* Nonetheless, the administrator may sell the fish for not less than its fair market value before the forfeiture proceeding in light of the perishable nature of fish. *Id.* § 904.505.

The party with an interest in the fish may petition for relief from forfeiture, including release of the seized property pending decision on the forfeiture. *Id.* § 904.506(f)(1). The NOAA has discretion to release all or some of the fish upon payment by the petitioner of the full value of the property or some lesser amount. *Id.* The amount paid and deposited represents the property seized and subject to forfeiture. *Id.* Payment of the amount by the petitioner constitutes a waiver by the petitioner of any claim arising from the seizure and custody of the property. *Id.*

### C. Jurisdictional Claims

In its motion for summary judgment, the government raises two jurisdictional arguments. First, NOAA argues that other courts have exclusive jurisdiction over the claims of Jensen, Leon Vona, and Peabody. Second, it argues that this court should decline to exercise jurisdiction over the claims of Harris, John Vona, Ochse, and Vaud J. Inc. because they duplicate the forfeiture actions before the court.

### 1. Exclusive Jurisdiction over the Res.

■ The government argues that this court does not have subject matter jurisdiction over the constitutional claims of Jensen, Leon Vona, and Peabody. The government contends that, pursuant to 28 U.S.C. 1355, exclusive jurisdiction for a forfeiture actions lies in the district court in the district in which the *res* is seized. The government argues that the exclusive jurisdiction of other district courts prevents this court from providing relief in plaintiffs' constitutional actions by returning the *res.*

The fishermen argue, however, that return of the *res* is not the sole relief sought in their constitutional actions. The fishermen maintain that, in settling the administrative actions against them, each entered an agreement by which the NOAA would return the fine and proceeds of the sale, without regard to title of the *res,* if this court determined that the fishermen prevailed in their constitutional actions before this court.[8]

---

**8.** The settlement agreement between Vaud J. Inc. is illustrative. It provides:

This court has jurisdiction over the subject matter of the constitutional actions pursuant to 28 U.S.C. § 1331 federal question jurisdiction. The government argues that the forfeiture actions give the district court in the district where the *res* was seized exclusive jurisdiction over the dispute. That court's exclusive jurisdiction over the forfeiture action, however, does not deprive this court of jurisdiction over constitutional issues raised by the fishermen under the Magnuson Act.

This court notes that, if it can not provide relief to the plaintiffs in the constitutional actions, the dispute would not be justiciable. The oldest and most consistent thread in the federal law of justiciability is that federal courts will not give advisory opinions. 13 C. Wright, A. Miller, & E. Cooper, Federal Practice and Procedure, § 3529.1, at 293 (quoting *Flast v. Cohen*, 392 U.S. 83, 88 S.Ct. 1942, 20 L.Ed.2d 947 (1966)). This court, however, finds that as a result of the settlement agreements entered by the fishermen at the administrative hearings, the court's declaration that the procedures utilized by NMFS are unconstitutional would afford relief to the fishermen. Under the settlement agreements, such a finding by this court would require the return of fines and the funds forfeited by the fishermen. Thus, the court's decision is not merely advisory. The government's argument is rejected.

### 2. Duplicity.

[2] Although this court can exercise its discretion to dismiss the constitutional actions as duplicative of the forfeiture actions pending in other districts, *see I.A.*

*Durbin, Inc. v. Jefferson Nat'l Bank*, 793 F.2d 1541, 1551–52 (11th Cir.1986), it will refuse to do so. The court will not delay the adjudication of this overly ripe matter in the expectation that another court may soon reach a decision on similar issues.

The government contends that plaintiffs Harris, John Vona, Ochse, and Vaud J. Inc. assert claims in their constitutional actions that are duplicative of their defenses in the forfeiture actions before this court; thus, the court should dismiss their complaints. The government makes an interesting judicial economy argument. Trial courts, however, have broad discretion whether to "stay or dismiss litigation in order to avoid duplicating a proceeding already pending in another federal court." *Id.*

This court will not exercise discretion to dismiss the constitutional cases. This court refused to consolidate the forfeiture actions before this court with the constitutional actions because they were sufficiently distinct. *See Jensen v. United States,* Civil No. 86–4176, Order of April 18, 1988 (D.N.J.) (constitutional actions and forfeiture proceedings are different forms of action not susceptible of determination in one trial without confusion and delay). Thus, the duplicity of arguments in the two sets of cases does not require that this court dismiss the constitutional actions.

### D. *Claim Preclusion*

#### 1. Jensen.

The government has moved to dismiss plaintiff Jensen from his constitutional action based on the Court of Appeals for the First Circuit's affirming the entry of a

---

5a. It is expressly agreed between the parties hereto that the payments made by [Vaud J. Inc.] will be deposited into a NOAA suspense account and, if possible, transferred to an interest bearing account, where the funds will be held pending the resolution of litigation presently pending in the United States District Court, District of New Jersey, captioned Vaud J. Inc. v. USA, et al., Civil Action No. 87–0084 and in the United States District Court for the District of New Jersey, captioned USA vs. Proceeds of the Sale of 7,377 Pounds of Atlantic Sea Scallops, To wit: 34,969.60 Civil Action No. 87–1205.

5b. Should [Vaud J. Inc.] prevail (as "prevail" is later defined herein) in that litigation

then the violation, shall be dismissed and removed from [Vaud J. Inc.'s] records and the funds, together with all accrued interest, if any, shall be repaid to [Vaud J. Inc.]. Should NOAA prevail in the litigation, the violations will remain of record, and the fund will be released from the suspense account and paid together with all accrued interest, if any, to the limited (sic) States....

5d. [Vaud J. Inc.] will have prevailed in the litigation if either court declares that the regulations pursuant to which the National Marine Fisheries Service has acted in prosecuting these cases are unconstitutional.

default judgment against Jensen in the companion forfeiture case brought in Rhode Island. The government maintains that Jensen's constitutional action before this court is moot because this court can not issue relief; its opinion as to the constitutionality of the regulations would be merely advisory. As discussed, this court may provide relief by declaring the regulations unconstitutional. Under the settlement agreement between Jensen and the government, Jensen may recover the amount of the forfeiture and fines notwithstanding the government's title to the *res*. This court, therefore, can provide relief in Jensen's constitutional action. The action is not moot.

■ Additionally, the First Circuit did not reach a decision on the merits of Jensen's case. Rather, the First Circuit merely held that the default judgment entered against Jensen was proper. Thus, Jensen is not precluded from raising his constitutional claims here inasmuch as they have not been adjudicated previously. The court will not dismiss Jensen's constitutional action on these grounds.

### 2. Leon Vona.

The government has also moved to dismiss Leon Vona's constitutional action as moot. The United States District Court for the Eastern District of Pennsylvania recently decided the companion forfeiture case by granting summary judgment on the merits for the government. *United States v. Proceeds of the Sale of 13,012 Pounds of Atlantic Sea Scallops*, Civ. No. 87–1753, 1989 WL 110862 (E.D.Pa. Sept. 25, 1989) (available at 1989 U.S. Dist. LEXIS 11340).[9] The court considered the merits of Vona's case and decided issues raised as defenses in the forfeiture case which are identical to the claims raised by Vona in his constitutional action. While Vona does not concede that his constitutional case is moot, he has instructed his attorney not to pursue the matter further. The court, therefore, will dismiss Leon Vona's constitutional case on *res judicata* grounds.

### E. Constitutionality of the Regulations

The fishermen raise various arguments addressing the constitutionality of the regulations promulgated under the Magnuson Act. First, the government contends that challenges to the substance of the regulations are time-barred by 16 U.S.C. § 1855(d), which provides for judicial review of regulations promulgated under the Magnuson Act only "if a petition for such review is filed within 30 days after the date on which the regulations are promulgated." *Id.* There is no dispute that the fishermen's challenges to the regulations in the constitutional actions were filed more than

---

**9.** The District Court for the Eastern District of Pennsylvania held that:

1. this court's previous order dated September 9, 1987 dismissing counts II and III did not bar that court's redetermination of the issues raised; *United States v. Proceeds of the Sale of 13,012 Pounds of Atlantic Sea Scallops*, Civil No. 87–1753, 1989 WL 110862 (E.D.Pa. Sept. 25, 1989) (available at 1989 U.S. Dist. LEXIS 11340, at *12);

2. the fishermen were not time-barred from challenging the NOAA regulation, notwithstanding section 305(d) (requiring direct challenge of regulations within 30 days of promulgation); *Id.* 1989 WL 110862, 1989 U.S.Dist. Lexis at *13–16;

3. the fishermen did not allege any constitutional injury from denial of bonded release because claimant-defendants did not request bonded release at the time of the seizure, thus, they could not be "denied" bonded release. Additionally, claimant-defendants were not entitled to notice of the right to seek bonded release. *Id.* 1989 WL 110862, 1989 U.S.Dist. Lexis at *24–25.

4. The court also held that the agency did not act arbitrarily and capriciously in denying bonded release of the scallops to claimants, again, because claimants never requested bonded release. *Id.* 1989 WL 110862, 1989 U.S.Dist. Lexis at *31.

The court also rejected claimant-defendants' arguments that the Act mandated judicial supervision of the sale of items seized under the Act, noting that Congress intended summary sale of perishable fish without court order to preserve the value of the *res*. *Id.* The court added that claimant-defendants could not show prejudice under this summary proceeding because they did not request bonded release. *Id.* 1989 WL 110862, 1989 U.S.Dist. Lexis at *28. The court explained that claimants could have sought judicial intervention by seeking injunctive relief in court. *Id.* 1989 WL 110862, 1989 U.S.Dist. Lexis at *31.

thirty days after their promulgation. The fishermen, however, raise the identical challenges to the regulations as defenses in the forfeiture actions.

Courts have uniformly rejected the government's argument that the thirty day limitation applies to collateral as well as direct attacks on the regulations. *See United States v. Proceeds of the Sale of 13,012 Pounds of Atlantic Sea Scallops*, Civ. No. 87–1753, 1989 WL 110862 (E.D.Pa. Sept. 25, 1989) (available at 1989 U.S. Dist. LEXIS 11340, at *13–16); *Gulf of Maine Trawlers v. United States*, 674 F.Supp. 927, 933 (D.Me.1987); *United States v. Seafoam II*, 528 F.Supp. 1133, 1138–39 (D.Alaska 1982). The cases cited by the government were direct challenges to the regulations that were properly time-barred and are, therefore, not persuasive here. *See National Food Processors Ass'n v. Klutznick*, 507 F.Supp. 76, 78 (D.D.C.1981); *Hanson v. Klutznick*, 506 F.Supp. 582, 586 (D.Alaska 1981).

■ This court agrees that the fishermen's defensive challenges in the forfeiture proceedings are not barred by the thirty day limitation of 16 U.S.C. § 1855(d). Thus, this court may address these challenges in the context of the motions for summary judgment in the forfeiture actions. Additionally, the government consented to adjudication by this court of the challenges to the regulations in the constitutional actions in its settlement agreements with the fishermen from the civil penalty proceedings. The court, therefore, rejects the government's argument that the challenges to the regulations are time-barred and will consider the challenges in the constitutional actions *seriatim*.

### 1. Count One.

The complaint asserts that the seizure of the scallops without a pre-deprivation hearing or a prompt post-deprivation hearing violated the fishermen's rights as guaranteed by the due process clause of the fifth amendment of the United States Constitution.

### (a) Pre-seizure Hearing.

■ Absent an "extraordinary situation," a party generally can not invoke the power of the state to seize a person's property without a prior judicial determination that the seizure is justified. *United States v. $8,850 in United States Currency*, 461 U.S. 555, 562 n. 12, 103 S.Ct. 2005, 2011 n. 12, 76 L.Ed.2d 143 (1983) (citing *Boddie v. Connecticut*, 401 U.S. 371, 378–79, 91 S.Ct. 780, 786, 28 L.Ed.2d 113 (1971)). The Supreme Court has recognized, however, that such an extraordinary situation exists when the government seizes items subject to forfeiture. *Calero–Toledo v. Pearson Yacht Leasing Co.*, 416 U.S. 663, 677, 679, 94 S.Ct. 2080, 2088, 2089, 40 L.Ed.2d 452 (1974) (due process does not require that customs officials conduct hearing before seizing items subject to forfeiture). The *Calero–Toledo* Court held that a Puerto Rico statute that permitted government authorities to seize, without prior notice or hearing, a yacht suspected of importing marijuana did not violate the due process clause of the Constitution. *Id.* at 679–80, 94 S.Ct. at 2089–90. The Supreme Court found several government interests to be decisive: the seizure served important governmental purposes; a pre-seizure notice might frustrate the statutory purpose; and the seizure was made by government officials rather than self-motivated parties. *Id.* at 679, 94 S.Ct. at 2089.

The fishermen are not entitled to a pre-deprivation hearing under the teachings of *Calero–Toledo*. Here, the seizure of scallops, subject to forfeiture, serves the important governmental purpose of enforcing the NOAA's regulations to prevent depletion of fishery resources. Additionally, pre-seizure notice could frustrate the purposes of the regulations. The scallops could be removed to another jurisdiction if advance warning of confiscation were given. Finally, the NMFS agents, acting for the federal government, seized the scallops rather than a self-interested party. Under *Calero–Toledo*, postponement of notice and hearing is, therefore, appropriate.

The fishermen argue that the concerns of criminal law enforcement are not

present here; thus, *Calero–Toledo* is not applicable. Additionally, the fishermen argue that the forfeiture exception to Rule E 4(f) of the 1985 Amendment to the Admiralty Rules, which requires a prompt hearing after arrest of property, does not apply because the government here does not seek to enforce criminal laws. These arguments are inapposite. If anything, the law provides stricter notice requirements for criminal defendants because of the liberty interest at stake. Here, the fishermen have no liberty interest at stake; they have only pecuniary interests at stake. Thus, if postponement of notice and hearing is appropriate in *Calero–Toledo*, it is clearly appropriate here.

### (b) Post-seizure, Pre-sale Hearing.

█ The fishermen argue that the Magnuson Act contemplates that the court will actively participate in decisions *prior* to the sale of the scallops. Section 1860(d)(2) of the Act provides that "Any fish seized pursuant to this chapter may be sold, subject to approval and direction of the appropriate court, for not less than the fair market value thereof. The proceeds of any such sale shall be deposited with such court pending the disposition of the matter involved." 16 U.S.C. § 1860(d)(2). Under the regulations implemented by the Secretary, an authorized NOAA agent may sell fish seized under the Act. 15 C.F.R. § 904.505(a). The proceeds of the sale "will be subject to any administrative or judicial proceedings in the safe [sic] manner as the seized fish would have been...." *Id.* § 904.505(d) (1989). Thus, the regulations clearly anticipate that the fish may be sold before judicial intervention. The fishermen contend that the regulation is not authorized by the Act and is beyond the Secretary's authority.

At least one court has rejected the fishermen's contention that judicial intervention must occur before sale. In *Gulf of Maine Trawlers v. United States*, 674 F.Supp. 927, 934 (D.Me.1987), the United States District Court for the Eastern District of Maine held that the regulations permitting sale of the fish before judicial intervention are consistent with the Magnuson Act and

its legislative purpose. *Id.* The court noted that, in 1983, Congress expanded the jurisdiction of the district court over forfeitures by providing that the court would have jurisdiction not only over the seized fish, but over "the fair market value thereof." *Id.* (citing 16 U.S.C. § 1860(a), (b)). The House Report on this change states that the provision for jurisdiction over the fair market value was added because "the current provision allowing only the seizure of the fish itself is often impossible to accomplish in timely fashion; thus the fish have no real value." *Id.* (citing H.R.Rep. No. 97–549, 97th Cong., 2d Sess. 32, *reprinted in* 1982 U.S.Code Cong. & Admin. News 4320, 4345). The court noted that the amendment, although added to the jurisdictional provision of the Act, clearly expressed Congress's concern about the inherent difficulties in preserving perishable fish pending judicial proceedings. *Id.* The court concluded that, because the seizure of fish did not require prior court approval, the Secretary's promulgation of regulations that did not mandate prior court approval for seizure of the fair market value of the fish was not unreasonable. *Id.*

The court also noted that other mandatory forfeiture procedures have been interpreted as transferring the right to the property to the government at the time of the violation and before judicial intervention. *Id.* at 934 n. 19 (discussing *United States v. Stowell*, 133 U.S. 1, 16–17, 10 S.Ct. 244, 247, 33 L.Ed. 555 (1890); *Strong v. United States*, 46 F.2d 257, 261 (1st Cir.1931)). Finally, the court recognized that the regulation authorized no more than what the vessel owners would have done, that is, to sell the catch at fair market value. *Id.* at 934. Noting that the value of the fish would deteriorate over time while court processes delayed their sale, the court found the regulations permitting sale before judicial intervention were reasonable. *Id.* This court finds the rationale supporting the *Gulf of Maine* decision persuasive. The language of the statute expressly states that the fish must be sold for their fair market value. 16 U.S.C. § 1860(d)(2). To preserve the fair

market value of the seized fish, the NOAA must sell them quickly. According to the fishermen, the susceptibility to spoilage of scallops is not a legitimate reason for immediate sale without a hearing because the scallops can be stored for several days without spoilage. They contend that the government has sufficient time to present the matter to a court before sale. Although the scallops may not spoil for several days, their fair market value should continue to decline as time passes. This court finds that the Secretary did not exceed his authority in promulgating regulations that permit sale of the seized fish before judicial intervention to preserve their fair market value and that the regulations are reasonable.

### (c) Post-seizure Hearing.

Although the fishermen were not entitled to a hearing before seizure and sale of the scallops, undue delay in a post-seizure hearing may also violate due process. Here, NMFS seized the catch of the various fishermen between July 15, 1986 and December 19, 1986; the government filed its forfeiture actions between December 31, 1986 and April 2, 1987; the fishermen were served in these actions between March 25, 1987 and May 5, 1987. The maximum time for any defendant between seizure and the filing of the forfeiture action is less than six months.

At the same time, the government issued NOVA's to each of the fishermen between November 11, 1986 and March 11, 1987; all fishermen received a NOVA within four months of the seizure. Thus, civil penalty proceedings were continuing when the government filed the forfeiture actions.

In *United States v. $8,850 in United States Currency*, 461 U.S. 555, 569, 103 S.Ct. 2005, 2014, 76 L.Ed.2d 143 (1983), the United States Supreme Court held that an eighteen month delay between the Custom Service's seizure of currency and its filing of a forfeiture action was not unreasonable and, therefore, did not violate the claimant's due process rights. The Court set forth the criteria to determine whether the government's delay in filing a forfeiture proceeding after seizure of property violates due process: the length of delay, the reason for the delay, the defendant's assertion of his or her right, and prejudice to the defendant. *Id.* at 564, 103 S.Ct. at 2012.

The fishermen assert that they do not allege that the delay in filing the forfeiture proceedings is a *per se* violation of due process. Rather, they assert that failure to provide a hearing before the scallops are sold denies them a hearing at a meaningful time under *Armstrong v. Manzo*, 380 U.S. 545, 552, 85 S.Ct. 1187, 1191, 14 L.Ed.2d 62 (1965). The fishermen contend that the sale of the scallops deprives them of any means to defend against civil penalty and forfeiture proceedings; therefore, they are substantially prejudiced. *See United States v. $8,850*, 461 U.S. at 569, 103 S.Ct. at 2014 (primary inquiry with respect to prejudice is whether delay has hampered claimant in presenting defense on the merits by loss of witnesses or evidence).

The fishermen argue that they are unable to measure the scallops while at sea by the precise weighing methods required by 50 C.F.R. § 650.21. Additionally, the method used by fishermen while at sea, the "volumetric method," may give results that are inconsistent with results obtained by the methods required by the regulations. Thus, the fishermen argue that they are unable to rebut the presumption that the entire catch is undersized once the catch is sold. According to the fishermen, release of the catch on bond or a pre-sale hearing is required to permit them to gather evidence to rebut the presumption.

Under the regulations, however, the party in possession of the shucked scallops can request that the inspecting agent take up to ten one-pound samples in addition to the samples already inspected. 50 C.F.R. § 650.21. Such evidence can be used to rebut the presumption that the entire catch of scallops is undersized. The fishermen suggest that this sampling is somehow inadequate and that they should be permitted to inspect the entire catch to show that it is not undersized. A broader inspection would certainly provide more evidence of the true size of the catch. In evaluating

the prejudice to the fishermen, however, this court disagrees with the fishermen's characterization that the sale without a hearing substantially prejudices them because they are unable to rebut the statutory presumption. Although the fishermen may not have extensive sampling, the regulatory scheme provides them with a means to obtain evidence to defend themselves in the penalty and forfeiture actions. The fishermen are not substantially prejudiced by this scheme. Additionally, once the scallops are sold, the fishermen suffer no further prejudice by delay in the post-seizure hearing.

Considering the remaining *$8,850* factors, this court concludes that the delay in the post-seizure hearing here does not violate due process. The fishermen asserted their rights to an administrative proceeding and brought constitutional actions to assert their rights. The court notes that the fishermen or their agents were on notice of the violations at the time of the seizure. Actual notice can be imputed to the fishermen at the time of the seizures. Formal notice came at the time the government sent NOVA's; in each case, the government sent the defendant a NOVA within four months of the seizure to seek court approval of the seizures.

The length of the delay here is substantial; the government seized thousands of dollars worth of scallops but did not advise the fishermen of their rights and administrative procedures until three to four months after the seizure. The government has not offered any justification for this delay. Notably, each of the plaintiffs in the constitutional actions filed his complaint before the government brought its civil penalty proceeding or its forfeiture proceeding, suggesting that plaintiffs sought a more immediate judicial hearing on the seizures.

The fishermen's seeking a more immediate remedy, however, does not render the delay in the government's civil penalty and forfeiture proceedings unacceptable under due process. While a four month delay is substantial, the fishermen have not made any showing that, after the scallops were sold, they were prejudiced by a four month delay in bringing civil penalty or forfeiture proceedings. Having already determined that the fishermen are not entitled to a pre-sale hearing, the court finds no additional prejudice resulted from a four month delay in the government's institution of the forfeiture proceedings.

The court notes, however, that a four month delay in notifying the fishermen of their rights under the act and of the administrative procedures to be followed is unreasonable. Given that Congress has created a relaxed procedure by which the NOAA can enforce its regulations by seizing property from private citizens without a warrant subject to speedy post-deprivation review in a civil forfeiture proceeding, the court warns that, in the future, the government's failure to show that it expeditiously initiated forfeiture proceedings will result in a finding that the government has violated the due process rights of the property owners. *See Gulf of Maine*, 674 F.Supp. at 939. Notably, in *United States v. $8,850 in United States Currency*, the government informed the claimant *within eight days* of the warrantless seizure that her property was subject to forfeiture and that she had a right to petition for remission or mitigation. 461 U.S. at 558–59, 103 S.Ct. at 2008–09.

Nonetheless, the absence of prejudice from the delay, even an unreasonable delay, tips the balance in favor of the government here. This court having concluded that the fishermen were not entitled to a pre-sale hearing, the government's delay in initiating post-sale proceedings did not substantially prejudice them. The court will, therefore, dismiss Count One in each of the constitutional actions in its entirety.

### 2. Count Two.

The fishermen contend in their constitutional actions that the following procedures violate due process:

1. lack of notice of their right to apply for remission or mitigation of the forfeiture "as soon as practicable;"
2. lack of notice of their right to bonded release of the scallops under the regulations;

3. application of the presumption contained in 50 C.F.R. § 650.21(a) that the entire catch is non-complying, which is arbitrary and unreasonable.

The court dismissed this entire count in its order dated September 9, 1987, however, the order does not indicate that the count is dismissed with prejudice.

### (a) No Notice to Apply for Remission.

Initially, the court notes that the fishermen's first contention under Count Two, that lack of notice of their right to seek remission or mitigation of the forfeiture as soon as practicable violates due process, essentially duplicates their complaint in Count One that delay in a post-seizure hearing violates due process. The court, in its September 9, 1987 order, dismissed the fishermen's claim that failure to give notice of remission violated due process under *United States v. Von Neumann*, 474 U.S. 242, 250, 106 S.Ct. 610, 615, 88 L.Ed.2d 587 (1986). The court has no reason to consider it here.

### (b) No Notice of Right to Bonded Release.

In its earlier order, the court also dismissed the fishermen's challenge that lack of notice of their right to bonded release of the scallops violated due process because the fishermen had no absolute right to bonded release. *See Jensen v. United States*, Civil No. 86–4176(SSB), slip op. at 7 (D.N.J. Sept. 9, 1987). In fact, the fishermen concede that they do not have an absolute right to bonded release of the scallops. The fishermen now raise the argument that, while they are not entitled to bonded release *per se*, the Secretary's action denying release on posting bond is reviewable by this court for an abuse of discretion. They argue that the Secretary has a "policy" to deny the release of scallops on bond which exceeds the agency's authority under the statute and is arbitrary and an abuse of discretion. In the alterna-

tive, they argue that *any* denial of bond is an abuse of discretion.

As evidence of this policy, the fishermen offer the Offense Investigation Report ("OIR") of NOAA Special Agent Fred V. George which states "that the enforcement policy was not to sell to a dealer found to be in violation (possessing)." OIR at 3–4 (June 23, 1987). In this report, Special Agent George states that, even though the violator submitted the highest bid for the scallops, ASAC Crossman told him not to sell the scallops to the violator. *Id.* at 4. The affidavit of the fishermen's counsel also states that he has been advised by NOAA Special Agents and NOAA counsel, Charles Juliand, Esquire, that NOAA will not permit a fisherman to post security and to obtain release of his catch. The fishermen contend that this automatic denial constitutes an abuse of the Secretary's discretion. (citing *United States ex rel. Accardi v. Shaughnessy*, 347 U.S. 260, 268, 74 S.Ct. 499, 503, 98 L.Ed. 681 (1954)).

The court has chosen to treat this argument as a motion for reconsideration of its prior dismissal of the issue.[10] Both sides address the issue in their papers and, therefore, the issue has been "squarely presented without surprise or resulting prejudice." *In Re Meyertech Corp.*, 831 F.2d 410, 423 (3d Cir.1987).

### (i) Reviewability of Agency Decisions.

The Administrative Procedures Act, 5 U.S.C. § 702 permits judicial review of agency decisions "to persons suffering legal wrong because of agency action." *Id.* The statutory exceptions to the general rule of reviewability include (1) where statutes preclude judicial review, and (2) where agency action is committed to agency discretion by law. *Id.* § 701(a). The United States Supreme Court has interpreted section 701(a)(2) as establishing a broad presumption in favor of reviewability, holding that the exception applies only when there

---

**10.** Given that the fishermen have since exhausted their administrative remedies, the questions are ripe for decision now. Although the fishermen technically did not amend their complaint to reassert these counts, they raise the argu-

ments in their motion papers and the government has responded to these arguments. The court finds, therefore, that judicial economy demands that it address these ripe claims now to avoid piecemeal adjudication.

is no law for the reviewing court to apply. *See Citizens to Preserve Overton Park, Inc. v. Volpe,* 401 U.S. 402, 410, 91 S.Ct. 814, 820, 28 L.Ed.2d 136 (1971). In *Overton Park*, the Court held that a statutory provision prohibiting the Secretary of Transportation from authorizing federal aid to construct a highway through a public park unless there was "no feasible alternative" provided law on which judicial review could be based. *Id.* at 410–13, 91 S.Ct. at 820–22.

Section 706(2)(A) of the Administrative Procedures Act provides:

> To the extent necessary to decision and when presented, the reviewing court shall decide all relevant questions of law, interpret constitutional and statutory provisions, and determine the meaning or applicability of the terms of an agency action. The reviewing court shall ... hold unlawful and set aside agency action, findings, and conclusions found to be ... arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law.

5 U.S.C. § 706(2)(A).

The United States Supreme Court, in *Heckler v. Chaney,* 470 U.S. 821, 828–35, 105 S.Ct. 1649, 1654–57, 84 L.Ed.2d 714 (1985), reconciled the language of section 701(a)(2) that makes action committed to agency discretion unreviewable with the abuse of discretion standard of section 706(2)(A). The Court stated that "review is not to be had if the statute is drawn so that a court would have no meaningful standard against which to judge the agency's exercise of discretion." *Id.* at 830, 105 S.Ct. at 1655. The Court continued, "if no judicially manageable standards are available for judging how and when an agency should exercise its discretion, then it is impossible to evaluate agency action for 'abuse of discretion.'" *Id.*

The Court of Appeals for the Third Circuit set forth the analytical framework for this court to follow in determining whether an agency decision is unreviewable under section 701(a)(2). Notably, "only upon a showing of 'clear and convincing evidence' of a contrary legislative intent should the court restrict access to judicial review." *Local 2855, AFGE (AFL–CIO) v. United States,* 602 F.2d 574, 578 (3d Cir.1979) (citing *Abbott Laboratories v. Gardner,* 387 U.S. 136, 87 S.Ct. 1507, 18 L.Ed.2d 681 (1967)). This court must consider whether (1) the action involves broad discretion, not just the limited discretion inherent in every agency action; (2) the action is the product of political, military, economic, or managerial choices that are not readily subject to judicial review; and (3) the action does not involve charges that the agency lacked jurisdiction, that the decision was motivated by impermissible influences such as bribery or fraud, or that the decision violates a constitutional, statutory, or regulatory command. *Id.* at 578–80. Focussing on the absence of fixed statutory or regulatory standards, the *Local 2855* court held that the army's decision to contract out services to a private concern was not reviewable. *Id.* at 580–81.

(ii) Reviewability of the Denial of Bonded Release.

■ Applying the *Local 2855* factors, this court concludes that the Secretary's decision to deny bonded release to the fishermen is not reviewable. The statute that permits the Secretary to release the scallops upon posting of a bond provides:

> Any officer authorized to serve any process in rem which is issued by a court having jurisdiction under section 1861(d) of this title shall—
>
> (A) stay the execution of such process; or
>
> (B) discharge any fish seized pursuant to such process;
>
> upon the receipt of a satisfactory bond or other security from any person claiming such property. Such bond or other security shall be conditioned upon such person (i) delivering such property to the appropriate court upon order thereof, without any impairment of its value, or (ii) paying the monetary value of such property pursuant to an order of such court....
>
> **Nothing in this paragraph may be construed to require the Secretary,**

**except in the Secretary's discretion or pursuant to the order of a court under section 1861(d) of this title, to release on bond any seized fish or the property or the proceeds of the sale thereof.**

16 U.S.C. § 1680(d)(1) (emphasis added). Notably, the statute provides no guidance on the criteria the Secretary must use to reach his decision whether to release the scallops. Additionally, the fishermen do not point to any statute or regulation that restricts the Secretary's discretion on the issue of bonded release. While agency regulations or internal policies may provide sufficient guidance to make possible federal review under an abuse of discretion standard, see *Chong v. Director, United States Information Agency*, 821 F.2d 171, 176 (3d Cir.1987) (regulation requiring review of policy, program, and foreign relations aspects provided sufficient guidance to review agency decision), the regulations here do not provide such guidance. Additionally, the internal policy to deny bonded release, if one actually existed, was followed by the Secretary and, therefore, he could not have abused his discretion by declining to follow policy.[11]

■ Under the guidelines set forth in *Local 2855, AFGE (AFL–CIO) v. United States*, 602 F.2d 574, 578–80 (3d Cir.1979), the court finds that the agency action involves broad discretion, not just the limited discretion inherent in every agency action. The Secretary's discretion in the bonding decision is unhampered by statute or regulation. Additionally, the action is the prod-

uct of managerial choices that are not readily subject to judicial review. The Secretary has exercised his discretion to permit the speedy sale of perishable fish; his allocation of resources, or exclusion of certain purchasers, is a managerial choice that this court is in no position to question. Finally, the action does not involve charges that the agency lacked jurisdiction or that the decision was motivated by impermissible influences such as bribery or fraud. Under these criteria, this court finds that the decision of the Secretary to deny bonded release to the fishermen is not reviewable under the Administrative Procedures Act, 5 U.S.C. § 701(a)(2). Thus, the court also rejects the fishermen's second contention that the regulations deny them due process because they received no notice of their right to bonded release. There is no absolute right to bonded release under 16 U.S.C. 1860 and, even if the Secretary has a policy to deny all requests for bonded release, this decision is not reviewable by the court.

**(iii) Secretary has Exceeded his Authority.**

The fishermen also contend that the present procedure of the Secretary precludes judicial review of bonding and sale of the scallops that Congress contemplated in 16 U.S.C. §§ 1860–1861; therefore, the Secretary has exceeded his authority under the statute. This argument essentially echoes their contention in Count One that due process requires a pre-sale hearing. They argue that the statute requires re-

---

**11.** The fishermen also contend that the automatic denial of bonded release constitutes an abuse of the Secretary's discretion because the Secretary has failed to exercise his discretion. (citing *United States ex rel. Accardi v. Shaughnessy*, 347 U.S. 260, 74 S.Ct. 499, 98 L.Ed. 681 (1954)). In *Accardi*, the United States Supreme Court held that, where the Attorney General of the United States promulgated regulations delegating his authority under the Immigration Act of 1917 to the Board of Immigration Appeals ("Board") to exercise discretion to consider appeals on applications for suspension of deportation, the Board's failure to exercise discretion, as required by regulation, violated the deportee's due process rights. *Id.* 347 U.S. at 268, 74 S.Ct. at 503. According to the allegations, the Attorney General dictated the decision of the Board by

circulating a list of persons whom the Attorney General planned to deport and the Board, knowing of the list, refused to suspend deportation. *Id.* at 267, 74 S.Ct. at 503. Notably, the body charged with the exercise of discretion was a board composed of subordinates within a department headed by the individual who formulated, announced, and circulated views of the pending proceeding. *Id.* *Accardi* is clearly distinguishable from the instant case because, here, the Secretary did not defer to the judgment of a superior's policy; rather, the Secretary allegedly developed an internal policy and merely exercised his judgment in conformance with that policy. The Secretary did not fail to exercise discretion or blindly adhere to the policy of a superior. *Accardi* is not controlling.

lease of the fish upon receipt of a bond or other security because 16 U.S.C. § 1861(d)(3) confers jurisdiction on the district court to "prescribe and accept satisfactory bond or other security from the person claiming such property." *Id.* Additionally, the court may order the Secretary to release the property on bond under 16 U.S.C. § 1860(d)(1)(B). This minimal participation of the court in the sale and seizure procedure is not compelled by the statute. Although some participation by the court is permissible under the statute, the legislative history shows that Congress intended to permit sale before judicial intervention. *See Gulf of Maine Trawlers v. United States,* 674 F.Supp. 927, 934 (D.Me.1987) (regulation permitting sale of fish without prior court approval is consistent with statute that permits sale subject to court approval and direction). The Secretary has not exceeded his authority under the statute.

#### (c) Presumption that Entire Catch is Non-complying.

The parties expend a significant amount of energy in their most recent briefs arguing whether the violation that permits seizure of the fish is the possession a non-complying sample group or whether the violation is the possession of a non-complying catch, which is presumed under 50 C.F.R. § 650.21(a) if a non-complying sample group is found. The government argues that, because the violation occurs when fishermen possess non-complying sample group, the fishermen are not entitled to the remaining fish even if they comply because the violation is complete. (citing 47 Fed.Reg. 35991, 35991–92 (Aug. 18, 1982) ("sampling ... establishes a violation if three or more of ten samples exceed the meat count standard"). The government argues that the Magnuson Act permits seizure of the entire catch upon "violation," 16 U.S.C. § 1860(a); therefore, it is able to seize the entire catch upon discovery of a non-complying sample group. Thus, the government argues, even if the fishermen could inspect the remaining scallops for compliance, this information would

not entitle them to return of the remaining scallops.

The fishermen argue that the fishery management plan for scallops specifically refers to a catch that is non-complying. The language of the fishery management plan discusses establishing a MPP measure that represents a "maximum average value *for the trip....*" *See* Fishery Management Plan at 139 (1982) (emphasis added).

■■■■■ An agency is to be accorded considerable deference by courts in interpreting its own regulations, unless that interpretation is plainly erroneous or inconsistent with the regulation. *Udall v. Tallman,* 380 U.S. 1, 16–17, 85 S.Ct. 792, 801, 13 L.Ed.2d 616, *reh'g denied,* 380 U.S. 989, 85 S.Ct. 1325, 14 L.Ed.2d 283 (1965); *Disabled in Action of Pennsylvania v. Sykes,* 833 F.2d 1113, 1117 (3d Cir.1987), *cert. denied sub nom., Philadelphia v. Disabled in Action of Pennsylvania,* 485 U.S. 989, 108 S.Ct. 1293, 99 L.Ed.2d 503 (1988). A presumption, however, is inherently rebuttable absent clear statutory language to the contrary. *United States v. Proceeds of the Sale of 13,012 Pounds of Atlantic Sea Scallops (Leon Vona),* Civil No. 87–1753, 1989 WL 110862 (E.D.Pa. Sept. 25, 1989) (available at 1989 U.S. Dist. LEXIS 11340, at *19).

■■■■■ The court finds here that NOAA's interpretation is at odds with the regulation and, therefore, rejects its argument that the presumption is not rebuttable. If possession of a non-complying sample were the violation that permitted seizure of the fish under 16 U.S.C. 1860(a), that portion of the regulations that creates the presumption would be redundant. Additionally, if the Secretary intended that the presumption be irrebuttable, the regulations could easily have stated as much by using more definite language. *See, e.g.,* 50 C.F.R. § 652.25 (1989) ("if any one inspected cage is found to be in violation of [the minimum size requirements,] all cages in possession landed by the same vessel *will be deemed* in violation of the size limits" (emphasis added)). Thus, this court concludes that the violation that permits seizure of the entire catch consists of posses-

sion of a catch that does not comply. The scallopers' challenge to the regulation that allows the presumption of a non-complying catch from a non-complying sample, therefore, is justified. *See United States v. Proceeds of the Sale of 13,012 Pounds of Atlantic Sea Scallops (Leon Vona)*, Civil No. 87–1753, 1989 WL 110862 (E.D.Pa. Sept. 25, 1989) (available at 1989 U.S. Dist. LEXIS 11340, at *21) (presumption is rebuttable).

The scallopers argue that this rebuttable presumption is arbitrary and unreasonable. They assert that the one-pound samples are statistically insignificant when compared to the size of an entire catch. At the time of the seizures here, the regulations provided that a violation existed if (1) the "averaged meat count for the entire sample group exceeds the [30 MPP] standard;" or (2) if the "number of meats in each of any three one-pound samples exceeds the [30 MPP] standard." 47 Fed.Reg. 35990, 36995 (Aug. 18, 1982). Thus, if the fishermen possessed three non-complying one-pound samples, the NOAA could presume that the entire catch was non-complying.

The Magnuson Act vests broad authority in the Secretary to promulgate such regulations as are necessary to carry out the conservation and management measures of an approved fishery management plan. *See* 16 U.S.C. §§ 1855(c), (g), 1827(g), 1853(a)(1)(A); *Lovgren v. Byrne*, 787 F.2d 857, 864 (3d Cir.1986); *National Fisheries Institute, Inc. v. Mosbacher*, 732 F.Supp. 210, 216 (D.D.C.1990). Congress limited judicial review of the Secretary's exercise of this discretion and permitted courts to only consider "whether this discretion was exercised rationally and consistently with the standards set by Congress...." *Maine v. Kreps*, 563 F.2d 1052, 1055 (1st Cir.1977); *Louisiana v. Baldridge*, 538 F.Supp. 625, 628 (E.D.La.1982). The fishermen here do not challenge that the regulatory presumption here is inconsistent with the purposes of the Magnuson Act or the fishery management plan. Rather, they assert that the presumption is not a rational exercise of the Secretary's discretion because the size of the sample is statistically insignificant.

The size of the sampling procedure, however, reflects the Secretary's decision how to allocate agency resources best. Inspection of the entire catch, while statistically significant, would take extraordinary amounts of personnel and time. Additionally, inspection of the entire catch is not always prudent because the fish is perishable. The court will not substitute its judgment for the Secretary's determination that the sampling procedure supports the presumption that the entire catch is non-complying. In this case, in particular, the average MPP counts were so high that the presumption is warranted. Thus, the regulatory presumption is not arbitrary and unreasonable on the facts before the court.

Having found that (1) no notice of the right to apply for remission is required, (2) that this court can not review the Secretary's decision to deny bonded release; and (3) that the regulatory presumption is not arbitrary and unreasonable, the court will dismiss Count Two in its entirety.

### 3. Count Three.

The fishermen contend that, because shucked scallops may shrink due to loss of moisture during the voyage, regulations that fail to consider the seasonal and geographic variations and weight loss are arbitrary and capricious. Additionally, the regulations provide that the fishermen may check compliance by using a volumetric test, however, this test does not yield results consistent with dock-side inspection methods.

The intent of the regulations is to prompt fishermen to make immediate inspection of the scallops, not dock-side inspection, to ascertain *before continuing to harvest* whether the scallops comply with regulations. This rational is consistent with the fishery management council's purpose to conserve limited resources. Thus, loss of weight over the course of the voyage is immaterial. Failure to take weight loss into account in promulgating the regulations is not arbitrary and capricious.

Additionally, precise weighing of the scallops at sea is unnecessary. The fishermen can use the volumetric method at the time of harvest to determine whether the catch complies with regulations. Although the fishermen argue that such volumetric equivalents can not be used to rebut the presumption that the entire catch is non-complying, in the cases before this court, that evidence should have been accurate enough for the fishermen to determine whether the scallops were undersized. Notably, in each case before this court, the violations were well above the acceptable MPP count and, therefore, precise weighing on a pitching and rolling scallop boat was not necessary. In fact, only one scalloper had a sample under the 30 MPP standard; every other fisherman was consistently over the acceptable standard. While the court agrees that precise weighing would be difficult during the voyage, the violations here were such that the volumetric equivalent should have put the fishermen on notice that the scallops were undersized. Thus, the court expresses no opinion on the arbitrariness of the weighing, as opposed to the volumetric, method of checking compliance. The nature of the violations before the court are so dramatic that the fishermen have not shown that the use of the volumetric method would lead to misleading results. The court will dismiss Count Three in its entirety.

#### 4. Count Four.

 Finally, the fishermen contend that the 30 MPP regulations for shucked scallops discriminates against full-time fishermen who shuck their catch at sea. Scallopers who do not shuck the scallops at sea are subject to 51 Fed.Reg. 24841, which permits scallops no smaller than 3½ inches in height; the fishermen contend that 3½ scallops are smaller than the 30 MPP standard permits. They claim there is no rational basis for the arbitrary distinction between scallops shucked at sea and those that return to port unshucked.

Initially, the court notes that the claim of the full-time fishermen does not implicate fundamental constitutional rights nor create suspect classifications; therefore, this court must review the statutory scheme for rationality. Generally, statutory classifications are valid if they bear a rational relation to a legitimate governmental purpose. *Regan v. Taxation With Representation,* 461 U.S. 540, 547, 103 S.Ct. 1997, 2001, 76 L.Ed.2d 129 (1983).

While the fishermen contend that the regulations draw a distinction between shucked and unshucked scallops, the "class" at issue here is the distinction between full-time and part-time fishermen.[12] Clearly, a rational basis exists for this distinction between the catch of full-time fishermen and part-time fishermen. As noted, each fishery management council prepares fishery management plans to conserve and regulate the harvest of resources. *See supra* at 1101. Full-time fishermen present a greater threat to the conservation of resources than those fishermen who harvest only part-time. In fact, the full-time fishermen's practice of shucking scallops during the voyage demonstrates that they have the capacity to harvest scallops in much greater numbers than part-time fishermen. The court finds no equal protection violation in the regulatory scheme. The court, therefore, will dismiss Count Four in the constitutional actions.

#### F. *Government's Cross-motion for Summary Judgment*

The parties agree that material facts are not in dispute. To oppose summary judgment for the government, the scallopers must come forward with evidence that, in light of their burden of proof at trial, could be the basis for a jury verdict in their favor. *See J.E. Mamiye & Sons, Inc. v. Fidelity Bank,* 813 F.2d 610, 618 (3d Cir. 1987) (Becker, J., concurring). Having rejected the fishermen's claims on all counts in the constitutional actions, the court will enter summary judgment for the government in these actions.

#### G. *The Forfeiture Actions*

In the forfeiture actions, the individual fishermen raise the arguments in their

---

**12.** Surely, the fishermen do not contend that shucked scallops are a protected class.

complaints in the constitutional actions as defenses. The fishermen concede that the forfeiture actions and the constitutional actions are essentially the same. Plaintiffs' Brief in Opposition to Defendant's Supplement Brief, filed May 3, 1990, at 5. This court has rejected the fishermen's claims on the merits in their constitutional actions; thus, it likewise rejects the defenses in the forfeiture actions. The fishermen, therefore, can not prevail on their motions for summary judgment in the forfeiture actions; rather, the government is entitled to summary judgment.

## III. CONCLUSION

This court has determined that the NOAA's procedures for seizure and sale of scallops that do not comply with the Magnuson Act do not violate the scallopers' due process rights. While the court rejects the government's claims that it does not have jurisdiction over the constitutional actions of fishermen whose forfeiture actions are pending in other district courts with exclusive jurisdiction over the *res*, it nonetheless will grant the government's motion for summary judgment and dismiss the constitutional actions brought by Jensen, Leon Vona, and Peabody. The court will dismiss Jensen's constitutional action, not on jurisdictional or *res judicata* grounds as the government requests, but on the merits. It will dismiss the constitutional action of Leon Vona under the principle of *res judicata*. The court will dismiss the constitutional actions of Vaud J. Inc., Harris, John Vona, Ochse, Peabody, and Rose on the merits.

In the forfeiture actions, the court will deny the motions of claimant-defendants for summary judgment and grant the motion of the government for summary judgment.

An appropriate order will be entered.