**J.E. MAMIYE & SONS, INC.,**
**Appellant,**

v.

**The FIDELITY BANK**

v.

**COMMONWEALTH MARINE AND**
**GENERAL ASSURANCE**
**CO., LTD.**

No. 86–1455.

United States Court of Appeals,
Third Circuit.

Argued Jan. 21, 1987.

Decided March 6, 1987.

---

Kenneth F. Carobus (argued), Morris & Adelman, P.C., Philadelphia, Pa., for appellant.

Edward M. Dunham, Jr. (argued), Miller, Marvin, Dunham, Doering, Screiber & Sloan, Philadelphia, Pa., for appellee.

Before SEITZ, BECKER and MANSMANN, Circuit Judges.

## OPINION OF THE COURT

MANSMANN, Circuit Judge.

In this action founded in negligent misrepresentation and estoppel, the plaintiff, J.E. Mamiye & Sons, Inc. ("Mamiye"), appeals from an order entering summary judgment in favor of the defendant, Fidelity Bank ("Fidelity").

Mamiye obtained a judgment against the Commonwealth Marine and General Assurance Co., Ltd. ("Commonwealth Marine"). Mamiye then served interrogatories in attachment upon Fidelity as garnishee. Fidelity initially indicated that it held two Commonwealth Marine checking accounts, but later disclosed that it serviced a third account—a substantial trust account—for Commonwealth Marine. Fidelity also provided Mamiye with a copy of the trust agreement. Fidelity failed, however, to report that it maintained a fourth account comprising the accrued interest on the trust principal. The parties entered into a stipulation which would protect Mamiye's rights, if any, in the trust account.

Three months later, Fidelity transferred without Mamiye's knowledge some $60,000 to Commonwealth Marine as interest on the trust corpus. A subsequent interpleader action resolved that Mamiye had perfected a claim to certain of the interpleaded funds not impressed with Commonwealth Marine's trust. By not stipulating with respect to the interest account, though, Mamiye lost all rights to the interest which Fidelity had paid over to Commonwealth Marine.

Mamiye thereupon filed this action against Fidelity, asserting that its failure to report explicitly the existence of the interest account had caused Mamiye to stipulate only as to the trust account. The district court granted Fidelity's motion for summary judgment on the ground that Mamiye had not demonstrated proximate cause between its loss and Fidelity's negligence. . Specifically, the court found certain language in the trust agreement sufficient to indicate the presence of a distinct interest account.

Since we find, however, that a genuine issue of material fact exists as to whether the defendant's alleged negligence caused the plaintiff's loss, we will reverse the judgment of the district court.

## I.

On May 28, 1982, the plaintiff filed with the Pennsylvania Court of Common Pleas a foreign judgment obtained against Commonwealth Marine. Mamiye also filed a writ of execution and interrogatories in attachment and served them upon Fidelity as garnishee. By answers to Mamiye's interrogatories dated June 7, 1982, Fidelity indicated that it held two Commonwealth Marine checking accounts with a combined balance of $31,147. Mamiye thereupon attached the two accounts. The court subsequently issued a customary provisional or-

der vacating Mamiye's writ of execution upon Commonwealth Marine's posting a bond.

Shortly thereafter, Fidelity's in-house counsel discovered that Commonwealth Marine maintained with Fidelity yet a third account—a trust account of over $500,000 consisting of a certificate of deposit, a United States Treasury bill, and cash. On June 24, 1982, Fidelity filed amended answers to Mamiye's interrogatories to reflect the trust account, and provided a copy of the trust agreement. Fidelity denied, however, that the trust account was attachable and, therefore, asserted that "the combined attachable balance is $31,147.00" [the current balance of the two checking accounts].

Notably, the trust agreement provided at Art. II, section 8, that

[t]he Trustee shall collect and receive the income from the Trust Fund, and, after deducting any expenses or other charges properly chargeable against income, shall pay over the net amount of such income upon the written order of the Company.

The parties presently agree that Mamiye's counsel realized the existence of the interest component of the trust. Concededly, however, Fidelity failed to indicate that the interest which accrued on the trust principal was deposited into a separate account—a fourth Commonwealth Marine account.

In light of Fidelity's amended answers to the interrogatories, Mamiye filed a motion to increase the bond for dissolution of attachment. The parties resolved this motion by stipulation and order on October 14, 1982. The order provided, *inter alia*, that Fidelity (and Commonwealth Marine) would give Mamiye at least 60 days notice of an account debit which would reduce the trust fund balance below $146,507.

On January 21, 1983, Fidelity transferred $60,339.84 to Commonwealth Marine's checking account, as interest proceeds on the trust account.

On February 23, 1983, Fidelity notified all parties that it would resign as trustee on April 23, 1983. On April 29, 1983, Fidelity filed in federal district court a complaint

in interpleader including Mamiye and Commonwealth Marine among the defendants, and deposited $440,891.61 into the court's registry. Mamiye defended its claim by arguing that it had successfully attached the entire trust fund. *See Fidelity Bank v. Commonwealth Marine and General Assurance Co., Ltd.,* 581 F.Supp. 999, 1013 (E.D.Pa.1984).

The district court, however, held only that Mamiye "apparently perfected a claim to some of the funds paid into court, but on the present record the court cannot determine how much is subject to Mamiye's attachment." *Id.* at 1015. The district court later reiterated its holding: "[Mamiye's] attachment did not reach assets impressed with Commonwealth[ ] [Marine's] trust because Mamiye was not a creditor entitled to payment under the Trust Agreement. Because principal, but no income, became part of the Trust, I held that Mamiye could recover the full amount *of the interpleaded sum* not impressed with Commonwealth[ ] [Marine's] trust." *Fidelity Bank v. Commonwealth Marine and General Assurance Co., Ltd.,* 592 F.Supp. 513, 517 (E.D.Pa.1984) (emphasis added).

On October 1, 1984, Mamiye filed this action against Fidelity. The gravaman of Mamiye's complaint was that Fidelity's failure to inform Mamiye explicitly that Commonwealth Marine maintained an interest account separate from its trust account caused Mamiye to stipulate only with respect to the trust account. As a result, Mamiye lost all rights to the $60,339.84 paid to Commonwealth Marine in January of 1983.

Following discovery, the parties filed, *inter alia,* cross-motions for summary judgment; Mamiye also filed a motion to amend its complaint. On June 12, 1986, the district court entered an order denying Mamiye's motion for summary judgment, granting Fidelity's cross-motion, and denying as moot Mamiye's motion to amend its complaint and Fidelity's motion for judgment on the pleadings.

In its bench opinion, the district court appeared to accept Mamiye's amended com-

plaint. The court held, nonetheless, that "there is no demonstration of the requisite proximate cause" between Mamiye's alleged loss and any breach of duty on Fidelity's part to inform Mamiye of the separate income account. The court pointed out that Fidelity had provided Mamiye with a copy of the trust agreement which distinguished assets "in the hands of the trustee hereunder constituting principal" from the income thereon. The agreement likewise indicated that the trustee was paying over net income amounts on Commonwealth Marine's order. The district court, therefore, found nothing to justify the averred understanding of Mamiye's counsel that Fidelity commingled interest with the trust principal.

This appeal timely followed the court's final order. We possess jurisdiction pursuant to 28 U.S.C. § 1291 (1982).

## II.

The plaintiff presents us with three issues on appeal. First, Mamiye contends that the district court erred in denying Mamiye's motion for summary judgment. Second, Mamiye attacks the district court's grant of summary judgment in favor of Fidelity. Third, the plaintiff claims that the district court abused its discretion in denying the motion for leave to amend the complaint.

On review of the district court's grant of summary judgment, we likewise examine whether "no genuine issue as to a material fact remains for trial, and matter of law." *Goodman v. Mead Johnson & Co.*, 534 F.2d 566, 573 (3d Cir.1976), *cert. denied,* 429 U.S. 1038, 97 S.Ct. 732, 50 L.Ed.2d 748 (1977). In applying the law to undisputed facts, our review is plenary. *Koshatka v. Philadelphia Newspapers, Inc.*, 762 F.2d 329, 333 (3d Cir.1985). We may reverse the district court's refusal to permit the plaintiff to amend its complaint if the court abused its discretion with respect to the liberal standard of Fed.R.Civ.P. 15(a). *Adams v. Gould Inc.*, 739 F.2d 858, 863 (3d Cir.1984), *cert. denied,* 469 U.S. 1122, 105 S.Ct. 806, 83 L.Ed.2d 799 (1985).

## III.

We turn first to the question of whether the district court improperly denied the plaintiff leave to amend its complaint since, as we have noted, the court appeared to consider the amended complaint in ruling upon the parties' cross-motions for summary judgment.

The standards governing review of a district court's denial of a motion to amend a complaint are well-established. In *Adams v. Gould Inc.*, 739 F.2d at 864, we observed:

> Fed.R.Civ.P. 15 embodies the liberal pleading philosophy of the federal rules. Under Rule 15(a), a complaint may be amended once as a matter of right and afterward by leave of the court, which is to be freely granted. *See Foman v. Davis*, 371 U.S. 178 [83 S.Ct. 227, 9 L.Ed.2d 222, citations omitted] (1962); *Dussouy v. Gulf Coast Investment Corp.*, 660 F.2d 594, 597–98 (5th Cir. 1981). This liberal amendment philosophy limits the district court's discretion to deny leave to amend. The district court may deny leave to amend only if a plaintiff's delay in seeking amendment is undue, motivated by bad faith, or prejudicial to the opposing party. *Foman* [ ], 371 U.S. at 182 [83 S.Ct. at 230, citation omitted]; *Boileau v. Bethlehem Steel Corp.*, 730 F.2d 929, 938 (3d Cir.[ ), *cert. denied,* 469 U.S. 871, 105 S.Ct. 221, 83 L.Ed.2d 150 (1984) ]. The court may also refuse to allow an amendment that fails to state a cause of action. *Massarsky v. General Motors Corp.*, 706 F.2d 111, 125 (3d Cir.[ ), *cert. denied,* 464 U.S. 937, 104 S.Ct. 348, 78 L.Ed.2d 314 (1983) ].

Mamiye's original complaint averred that Fidelity failed to report the existence of a separate account for interest accrued on the trust principal. The plaintiff also alleged that Fidelity's payment of $60,339.84 "was in violation of the attachment execution, the Rules of Court and applicable law." Fidelity's answer raised as an affirmative defense, *inter alia*, a motion to dismiss for failure of Mamiye's complaint to state a claim upon which relief could be granted. Notably, although the district

court denied the defendant's motion to dismiss as moot, the court observed in its opinion that "the complaint does not in recognizable fashion allege either in tort or in contract some breach by defendant Fidelity of an obligation the law imposes on it in relation to the plaintiff Mamiye."

It is likewise instructive, however, that Fidelity's affirmative defenses acknowledged tacit averments of negligence in Mamiye's complaint. Specifically, the defendant's seventh affirmative defense alleged that any injuries to the plaintiff were "not [due] to any act, omission or fault on the part of defendant." And Fidelity's ninth affirmative defense insisted, "At the time it distributed the funds which are the subject of this action, defendant owed no duty of any kind to plaintiff or, in the alternative, if such a duty existed, defendant did not breach same."

In its amended complaint, Mamiye (in the words of the district court) attempted to "recast its complaint in terms of an allegation of negligent omission, or, in the alternative, of estoppel." The court then inquired whether the amended complaint stated a "factually supportable cause of action against Fidelity." Yet, although the district court addressed the merits of the amended complaint, the court never granted Mamiye's motion to amend. Rather, the court denied the motion as moot apparently on the ground that "there is no demonstration of the requisite proximate cause" to support a claim of negligent misrepresentation. The court thus effectively applied Fidelity's motion for summary judgment to Mamiye's amended complaint.

■ In light of these historical facts, we must determine at the present juncture whether the district court should have granted the plaintiff's motion to amend its complaint. It is clear initially that, because it ruled upon Mamiye's amended complaint, the court as a matter of law should have granted the motion to amend before disposing of the amended complaint on the merits. A district court, of course, may not enter summary judgment upon a proposed amendment without first granting the motion to amend. Otherwise, the complaint

will not be properly before the court. The question remains, however, whether granting the motion to amend would prejudice the defendant. Fidelity argues that the presence of undue delay and potential prejudice as a matter of law precludes Mamiye's amended complaint and that, in any event, the evidence of record cannot support the allegations of the pleading.

■ We set forth the legal standard for undue delay and potential prejudice in *Adams v. Gould Inc.*:

> The passage of time, without more, does not require that a motion to amend a complaint be denied; however, at some point, the delay will become "undue," placing an unwarranted burden on the court, or will become "prejudicial," placing an unfair burden on the opposing party. *See Chitimacha Tribe of Louisiana v. Harry L. Laws Co.*, 690 F.2d 1157, 1163 (5th Cir.1982)[, *reh'g denied*, 697 F.2d 1092 (5th Cir.), *and cert. denied*, 464 U.S. 814, 104 S.Ct. 69, 78 L.Ed.2d 83 (1983)]; *Tefft v. Seward*, 689 F.2d 637, 639 (6th Cir.1982). The question of undue delay, as well as the question of bad faith, requires that we focus on the plaintiffs' motives for not amending their complaint to assert this claim earlier; the issue of prejudice requires that we focus on the effect on the defendants.

*Adams*, 739 F.2d at 868.

Our review of the record does not demonstrate "undue delay" with respect to Mamiye's amended complaint. The docket sheet in these proceedings indicates that the plaintiff filed its original complaint on October 18, 1984. The defendant answered on November 13, 1984. We previously have noted that, assuming arguendo that Mamiye's complaint was vague, Fidelity was able to discern allegations of negligence. Indeed, Mamiye's November 1, 1985 motion for summary judgment makes clear its position. Therein, the plaintiff averred that, had Fidelity properly answered the interrogatories in attachment and "revealed that it had two accounts ... rather than one account ... the Plaintiff could have had the Stipulation and Order drawn to clearly protect its interest in both

accounts." Mamiye also alleged that its loss of rights in the $60,339.84 at issue flowed "as a direct result" from Fidelity's negligence.

In its January 2, 1986 cross-motion for summary judgment (also captioned as both a motion to dismiss and a motion for judgment on the pleadings), however, the defendant specifically contended that "[p]laintiff has not amended its Complaint to allege an action in ... negligence...." Mamiye responded on January 24, 1986 with, *inter alia*, its motion to amend the complaint. Manifestly, then, it appears from the record that the plaintiff amended its complaint solely to clarify its litigation position. We conclude, therefore, that no basis in fact exists for labeling any delay in the arrival of Mamiye's amended complaint as "undue."

Nor do we find any evidence of prejudice to Fidelity. On the one hand, the defendant in its brief has asserted no particular prejudice except for the mere passage of time. On the other hand, Fidelity appears fully to have understood the basis for Mamiye's complaint from its initial filing. At most, the amended complaint sought (in the words of the district court) to "recast" the original pleading. The amendment, however, neither required additional discovery nor disrupted the district court's schedule. The court, in fact, was clearly able to address the merits of the amended complaint in light of the stipulated facts of record.

Finally, Fidelity argues that denial of leave to amend in effect constituted harmless error since, as the district court concluded, there was no proximate cause between Fidelity's assumed negligence and Mamiye's alleged injury. For the reasons which follow, we hold that a genuine issue of material fact exists on this issue. Therefore, we further hold that the plaintiff's amended complaint was properly before the district court and that the court improperly granted summary judgment in favor of the defendant.

## IV.

### A.

In *Eisenberg v. Gagnon,* 766 F.2d 770, 778 (3d Cir.), *cert. denied,* —— U.S. ——, 106 S.Ct. 342, 88 L.Ed.2d 290 (1985), we observed that the Pennsylvania Supreme Court had accepted the elements of the tort of negligent misrepresentation as set forth in the Restatement (First) of Torts § 552 (1938). *See Rempel v. Nationwide Life Ins. Co.,* 471 Pa. 404, 408, 370 A.2d 366, 367–68 (1977). We likewise noted that the Second Restatement does not significantly differ from the First. *Eisenberg,* 766 F.2d at 778. Pennsylvania's courts resultantly have relied upon the Second Restatement version of § 552. *See, e.g., Mill-Mar, Inc. v. Statham,* 278 Pa.Super. 296, 299, 420 A.2d 548, 550 (1980), *appeal dismissed,* 499 Pa. 219, 452 A.2d 1017 (1982).

The Restatement (Second) of Torts § 552 provides in relevant part:

(1) One who, in the course of his business, profession or employment, or in any other transaction in which he has a pecuniary interest, supplies false information for the guidance of others in their business transactions, is subject to liability for pecuniary loss caused to them by their justifiable reliance upon the information, if he fails to exercise reasonable care or competence in obtaining or communicating the information.

(2) ... [T]he liability stated in subsection (1) is limited to loss suffered

(a) by the person or one of a limited group of persons for whose benefit and guidance he intends to supply the information or knows that the recipient intends to supply it; and

(b) through reliance upon it in a transaction that he intends the information to influence or know that the recipient so intends or in a substantially similar transaction.

Restatement (Second) of Torts § 552, *quoted in Eisenberg,* 766 F.2d at 778.

Here, the district court assumed the existence of the elements of duty, breach of duty, and damages implicitly required by § 552. The court concluded, however, that "there is no demonstration of the requisite proximate cause." Because in reviewing a

grant of summary judgment we must examine whether either cross-movant deserves judgment as a matter of law, we must inquire presently whether a genuine issue of material fact remains for trial as to any element of the negligent misrepresentation claim.

First, it is clear that Fidelity had a duty under Pennsylvania law to answer Mamiye's interrogatories fully and accurately. Pa.R.Civ.P. 3144(a) provides:

The plaintiff may, at the time of issuance of the writ [of execution] or thereafter, file and serve interrogatories directed to the garnishee respecting property of the defendant in his possession. The plaintiff in his interrogatories may require the garnishee to include in his answer, so far as relevant, ... the specific amount of any debt, the value and location of any property and the nature and amount of consideration given for any transfer of property.

*See also* Pa.R.Civ.P. 3117 (providing for discovery in aid of execution).

Second and similarly beyond dispute is Fidelity's failure to indicate in its answers to the interrogatories that the interest which accrued on the corpus of Commonwealth Marine's trust comprised a separate account. The district court's opinion, in fact, notes that Fidelity's counsel "[did] not acknowledge negligence, but does say it is arguable." The court characterized this response as a "diplomatic" admission of breach of duty. Third, Mamiye has suffered pecuniary loss as a result of stipulating with respect to the principal trust account but not with respect to the separate interest account.

The crux of the legal issue before us remains, however, whether Mamiye came forward with sufficient evidence that it had justifiably relied upon the information supplied by Fidelity. We conclude that evidence exists which could support a finding of reliance.

The district court held that "a transfer of funds [was] entirely anticipatable by anyone who read with care the trust agreement ..." and that, therefore, there was "no basis at all for concluding that Mamiye

[was] ... gulled [into the stipulation] by Fidelity's non-disclosure that income and principal were kept in separate boxes, that [is] to say, separate accounts by the Fidelity Bank." Yet we find nothing in the trust agreement so unmistakably indicating the existence of a distinct income account that Mamiye's reliance on Fidelity's answers to the interrogatories would be unjustifiable as a matter of law. Fidelity's in-house lawyer, Carol Ballentine, in fact, stated in an affidavit:

When I amended the Bank's answers to Mamiye's interrogatories in attachment, I did not specify that the Bank had set up two separate accounts relevant to the trust account, one account for the principal and one account for the interest, because I had not been informed of and was not aware of that fact. Had I been, I would have disclosed the complete details of the separate accounts to Mamiye.

It seems that in the face of an inconclusive trust agreement a factfinder could conclude that Mamiye properly relied upon Fidelity's answers to the interrogatories which disclosed only a single corporate trust account and alleged an attachable balance of $31,147, the amount in the two checking accounts. Moreover, in light of the amended answers to the interrogatories, it seems that a factfinder could conclude that it was wholly unwarranted to require Mamiye to cull the detailed paragraphs of ten pages of a trust agreement to determine the completeness of the garnishee's disclosures.

In responding to the defendant's cross-motion for summary judgment, the plaintiff specifically averred, "Had the Defendant's Bank reported that there were two accounts, the attorney for the Plaintiff would have arranged before Judge Gafni [in the state court proceeding] to keep a hold on both accounts." The plaintiff continued, "[T]he Plaintiff did nothing to protect its interest in the second account because it knew nothing of the second account. Had that account been reported, the Plaintiff would have retained its rights to that account as well as the Trust Fund by attachment or consent order and that

617 at top right

account would have been present to be interpleaded into this Court."

We find that reasonable minds could differ on what caused the plaintiff's loss. *See Little v. York County Earned Income Tax Bureau,* 333 Pa.Super. 8, 17, 481 A.2d 1194, 1199 (1984), *appeal dismissed,* 510 Pa. 531, 510 A.2d 351 (1986); *Eisenberg,* 766 F.2d at 779. Therefore an issue of material fact remains on this record for the trier of fact, and the grant of summary judgment in favor of Fidelity must be reversed.

### B.

■ The plaintiff's amended complaint additionally included a count for estoppel. In essence, Mamiye alleged that Fidelity's representation that it maintained a single trust account on behalf of Commonwealth Marine should preclude it from asserting that the separate income account is not the "trust account" or "trust fund" with respect to which the parties stipulated.

Under Pennsylvania law

"[e]quitable estoppel arises when a party by acts or representations intentionally or through culpable negligence, induces another to believe that certain facts exist and the other justifiably relies and acts upon such belief, so that the latter will be prejudiced if the former is permitted to deny the existence of such facts." *Straup v. Times Herald,* 283 Pa.Superior Ct. 58, 71, 423 A.2d 713, 720 (1980) *allocatur denied.*

... The party asserting estoppel has the burden of proving the elements by clear, precise, and unequivocal evidence. *Blofsen v. Cutaiar,* 460 Pa. 411, 417, 333 A.2d 841, 844 (1975).

*Cosner v. United Penn Bank,* 358 Pa.Super. 484, 517 A.2d 1337, 1339 (1986).

As we have already noted, a material issue of fact remains for trial regarding whether any reliance by Mamiye on Fidelity's failure to report the existence of the separate interest account was justified.

Thus, summary judgment on the estoppel issue would be premature.

Because an issue of material fact as to proximate cause exists, however, we likewise refuse Mamiye's invitation to grant summary judgment in its favor.

### V.

We conclude that, because a genuine issue of material fact exists as to whether Fidelity's answers to Mamiye's interrogatories proximately caused its loss of rights in Commonwealth Marine's interest account, the district court's grant of summary judgment in favor of the defendant and against the plaintiff will be reversed. We further hold that the district court abused its discretion in denying amendment of the complaint. We will vacate the order granting summary judgment and will reverse the order denying the motion for leave to file an amended complaint.

BECKER, Circuit Judge, concurring:

This Court has held that a "trial court may properly deny leave to amend where the amendment would not withstand a motion to dismiss." *Massarsky v. General Motors Corp.,* 706 F.2d 111, 125 (3d Cir. 1983). In my view, the procedure followed here by the district court raises what is in effect the "next" question, i.e. whether or not leave to amend can be denied because, as was the case here, the judge thinks the amended complaint would not survive a motion for summary judgment.

Although the majority does not reach this question, I think that whether a motion for summary judgment may be considered at a particular stage of a lawsuit's progress is an important question which is necessarily presented by the procedural history of the case.[1] Therefore, although I concur entirely in the majority's opinion and result, I write separately to address this issue. For the reasons set forth below in Part II, I would hold that a motion for leave to amend a complaint may not be denied simply because the district court believes that the amended complaint would

---

**1.** The district court did not assess the sufficiency of the complaint, but rather the sufficiency

of the record, to ascertain whether the record left questions of material fact unresolved.

not survive a motion for summary judgment.

### I.

When read together, the Supreme Court's recent opinions in *Anderson v. Liberty Lobby, Inc.*, —— U.S. ——, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986), and *Celotex Corp. v. Catrett*, —— U.S. ——, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986), instruct that a motion for summary judgment must be granted unless the party opposing the motion can adduce evidence which, when considered in light of that party's burden of proof at trial, could be the basis for a jury finding in that party's favor. This is at least a break in tone with prior law, under which summary judgment was understood to be a "drastic remedy" which "may not be granted where there is the slightest doubt as to the facts." *Tomalewski v. State Farm Life Insurance Co.*, 494 F.2d 882, 884 (3d Cir.1974). The party requesting summary judgment need not put on any evidence himself: he may succeed by pointing out those lacunae in the nonmovant's evidence which the movant claims would prevent a jury from finding in the nonmovant's favor at trial. *Celotex*, 106 S.Ct. at 2553.

Under *Celotex* and *Anderson*, therefore, a plaintiff can be put to his proof whenever the defendant chooses. If the motion for summary judgment is considered on the merits, plaintiff will be out of court if he has not adduced sufficient evidence to get to a jury on every element of his case. This makes the timing of summary judgment motions a very important matter, for it is quite likely that, when a complaint is first filed—or amended to set out a new theory of liability—a plaintiff will indeed lack enough evidence to get to a jury on every element. But we would not want to end the case because the plaintiff has not then adduced sufficient evidence. We would instead want to permit the plaintiff to go forward with the discovery he believes necessary, and only put him to his

proofs after he has had the opportunity to develop them.

Rule 56(f), Fed.R.Civ.P., governs when a motion for summary judgment may be considered on the merits. We have held that under that provision a trial judge may abuse his discretion if he decides a summary judgment motion when the party opposing it needs and is entitled to additional discovery which might demonstrate the existence of questions of material fact. *See Mid-South Grizzlies v. National Football League*, 720 F.2d 772 (3d Cir.1983). Under the regime of *Celotex* and *Anderson*, the *Mid-South Grizzlies* timing requirement becomes more important.

The foregoing suggests that, by assuming the complaint amended in this case and then granting summary judgment for the defendant, the district court ignored the important question whether a summary judgment motion should have been considered at that point. Indeed, whenever a district court rejects an amendment to a complaint because the complaint as amended would not survive a motion for summary judgment, it necessarily ignores the timing question, or more accurately, it implicitly concludes that the summary judgment motion is timely. In many cases that unexamined assumption will not be correct.

To facilitate the separate analysis of the timing question, I believe that the district court should have addressed the issues in the following order:

> 1. Should the amendment be allowed?

(decided without reference to whether the amended complaint would survive a motion for summary judgment); If so,

> 2. Should a motion for summary judgment be entertained now?

(decided by analysis of whether the party opposing the motion needs and is entitled to further discovery to demonstrate the existence of questions of material fact); If so,

> 3. Should summary judgment be granted? [2]

---

**2.** Whether or not a party "needs and is entitled to further discovery" may often turn on what

gap in the party's case the court thinks might be grounds for a grant of summary judgment.

## II.

That the timing issue is important in this case is demonstrated by the fact that defendant Fidelity has pointed to gaps in the plaintiff's case relating to the state of mind of the attorney who represented Mamiye in the negotiations with Fidelity over the scope of the stipulation. Fidelity argues that

> there is no evidence of record to support Mamiye's contention as to what Mr. Shore "thought when he signed the stipulation" (Mamiye's brief, p. 18), as to how Mr. Shore defined the trust fund to include principal and interest (Mamiye's brief, p. 19), as to Mr. Shore's reliance on Fidelity's Amended Answers to the Interrogatories in Attachment (Mamiye's brief, pp. 19, 20, 23), as to Mr. Shore's reliance on the stipulation and order (Mamiye's brief, p. 25) as to Mr. Shore's conviction that "he had Mamiye's interests protected" (Mamiye's brief, p. 25), as to what Mamiye "could" have done had it been informed of the existence of the two separate accounts (Mamiye's brief pp. 16, 17), or indeed what Mamiye "would" have done or argued in the proceeding before Judge Gafni (00266, 00270) and what Judge Gafni "would" have ruled (00270).

Appellee's br. at 14–15. Mamiye responds to this list of gaps in its case by arguing that any uncertainty about these issues should be resolved at trial. Mamiye Reply Br. at 4.

Notwithstanding Mamiye's contention, I believe it possible that the factual issues raised above could be resolved on summary judgment, but only after Mamiye had been given an opportunity to depose Mr. Shore to ascertain his state of mind. Mamiye was not obliged to have sought that discovery before it moved to amend its complaint to advance a theory under which this information was relevant. Yet addressing—and granting—Fidelity's motion for summary judgment immediately upon the filing of the amended complaint in effect subjected Mamiye to exactly that obligation, and penalized Mamiye with dismis-

sal because of its failure to produce this kind of evidence at that early stage.

I am persuaded that summary judgment was improperly granted here because, as the majority observes, at 617, the Trust Agreement does not indicate in any way that Commonwealth had an account at Fidelity which was not governed by the Trust, and which was therefore more likely to be subject to attachment than the funds which were so governed. Even if Mamiye's counsel had read the document, therefore, he would not have been put on adequate notice. To the extent that that fact is not itself dispositive of the motion for summary judgment, however, the motion must turn on other indications of what actually motivated Mamiye's lawyer. See Majority opinion at 617 (discussing plaintiff's averment that plaintiff "would have" taken various precautions had it known about the existence of a second Fidelity account). Because that issue is of such importance here, I think the district court erred by addressing and granting Fidelity's motion for summary judgment without first deciding whether Mamiye had yet had sufficient opportunity to gather the information necessary to eliminate what Fidelity contends are the gaps in plaintiff's case.

---

Once those grounds have been identified the district court may then find it profitable to go back and ascertain whether the non-moving party is at fault because those gaps in its case have not yet been filled.