ORDER AND MEMORANDUM
 

 DuBOIS, District Judge.
 

 ORDER
 

 AND NOW, this 6th day of April, 2004, upon consideration of the Defendant’s Motion for Summary Judgment (Document No. 12, filed October 24, 2003), Plaintiffs Brief in Opposition to Defendant’s Motion for Summary Judgment (Document No. 15, filed November 14, 2003), Defendant’s Reply Brief in Support of Summary Judgment (Document No. 16, filed December 1, 2003), Plaintiffs Surreply in Opposition to Defendant’s Motion for Summary Judgment (Document No. 17, December 10, 2003), IT IS ORDERED that Defendant’s Motion for Summary Judgment is GRANTED IN PART and DENIED IN PART as follows:
 

 
 *DCCLXIII
 
 (1) Defendant’s Motion for Summary Judgment is GRANTED with respect to plaintiffs claims under the Age Discrimination in Employment Act for punitive damages and damages for pain and suffering, humiliation and embarrassment;
 

 (2) Defendant’s Motion for Summary Judgment is GRANTED with respect to plaintiffs claim under the Delaware Human Relations Act;
 

 (3) Defendant’s Motion for Summary Judgment is DENIED in all other respects.
 

 It is FURTHER ORDERED that a conference to schedule further proceedings will be conducted in due course.
 

 MEMORANDUM
 

 I. INTRODUCTION
 

 Plaintiff Gunnar Steward (“Steward”) filed this action against his former employer, Sears, Roebuck and Co. (“Sears”), alleging that Sears terminated his employment in violation of the Age Discrimination in Employment Act, 29 U.S.C. § 261,
 
 et seq.
 
 (“ADEA”), and the Delaware Human Relations Act, 19 Del. Laws § 711,
 
 et seq.
 
 (“DHRA”). Steward later agreed to withdraw his DHRA claim.
 

 Sears moved for summary judgment on the ADEA claim based on the following three arguments: (1) Steward cannot establish a prima facie case of age discrimination; (2) Sears has presented a legitimate non-discriminatory reason for discharging Steward; and (3) Steward cannot establish that the reasons proffered by Sears for the discharge were a pretext for illegal discrimination.
 

 II. FACTS
 

 Steward began working for Sears on March 19, 1979 as a Lawn and Garden Technician. He worked in that position for approximately eight years until his promotion to Senior Technician in 1987. After eleven years as a Senior Technician, Steward was promoted to the position of Technical Manager in December 1998. Steward held this position until he was terminated on July 2, 2001.
 

 Throughout Steward’s tenure as a Technician and Senior Technician, he received positive performance evaluations, regular pay increases and merit bonuses. Steward also received positive evaluations for his performance as a Technical Manager from two former District Service Managers (“DSM”), Alan Rushing and Roy Vasseur. Specifically, Mr. Rushing testified that his view of Mr. Steward’s leadership skills “was very favorable.” Rushing Depo. at 23, 25, 42, 43. Mr. Vasseuer also rated Steward as “above meets expectations” in both business results and in leadership.
 

 Steward alleges that his troubles at Sears began when Phillip Schweizer (“Schweizer”) was hired as the DSM of the Wilmington Service Center in December 2000. From the time Schweizer started at Sears’s Wilmington facility, Steward alleges that Schweizer treated him differently than the younger Technical Managers. These younger Technical Managers were: Brian Merkel (“Merkel”), age 35, Tony Carter (“Carter”), age 45,
 
 [1]
 
 and Mark DeWit (“DeWit”), age 34. Joyce Sipple, age 59, was the only Technical Manager under Schweizer’s supervision who was older than Steward.
 

 
 *DCCLXIV
 
 On February 21, 2000, Steward received his first negative performance evaluation during his employment at Sears. The evaluation was completed by Schweizer who, on a scale of “1” to “5”
 
 [2]
 
 rated Steward as follows: “consistently meets expectations; solid, value-added performance” (3) in business results or production; “some expectations met” (2) in leadership; and “consistently meets expectations; solid, value-added performance” (3) in customer satisfaction. Despite the negative evaluation, Steward was awarded a 2% merit increase on March 1, 2001 and an annual bonus of $9,960 on March 15, 2001.
 

 As a consequence of the negative evaluation, Steward was placed on a Performance Plan for Improvement (“PPI”). The PPI raised four deficiencies in Steward’s work performance: (1) failure to manage technicians, as multiple repair attempts were being made without Steward’s involvement; (2) failure to follow-up with customer complaints; (3) inadequate preparation for weekly GAP
 
 [3]
 
 meetings; and (4) failure to meet a deadline for providing technicians’ vacation information to Schweizer.
 

 Steward disputes the accuracy and/or significance of each of the criticisms raised in the PPI. First, Steward asserts he always consulted the “Repeat Multiple Attempt” report that monitored the attempts to complete a service call, and that Schweizer never provided him with documentation showing that he did not provide input to technicians when multiple attempts were required to complete a repair. Next, Steward contends that the only customer complaint raised in the PPI resulted from a technician having unexpected emergency gall bladder surgery during the scheduled repair. Steward claims that the repair was ultimately completed by another technician. Third, Steward argues that he always completed a GAP report in collaboration with two other Technical Managers — Carter and Sipple. Steward also alleges that a younger Technical Manager, Merkel, never participated in producing the GAP report and yet was never reprimanded for that failure. Finally, Steward claims that he completed the technician vacation schedules, although he was delayed a short time because the vacation slips were lost during an office move that Schweizer ordered without giving notice to Steward and while Steward was out of the office.
 

 Steward contends that despite his disagreement with criticisms raised in the PPI, he addressed all of the problems identified, and that he should have been taken off the PPI. Schweizer, however, extended the PPI. The 60-day PPI followup, given to Steward on April 26, 2001, raised four additional performance issues: (1) poor management of technicians Pandora, Lindsay and McNeese; (2) failure to follow-up with four customer complaints; (3) failure to proactively communicate with the DSM; and (4) massive backlog of repairs caused by inadequate involvement in the Parts Distribution Center (“PDC”) process
 
 [4]
 
 and failure to staff properly.
 

 
 *DCCLXV
 
 Steward disputes each of the criticisms raised in the 60-day follow-up PPI. Steward contends: (1) he had approximately 3,000 customers per month and that Schweizer’s criticisms regarding customer service was “conjuring” issues to criticize; (2) there is no evidence in the customer reports for three of the customers alleged to have registered complaints; (3) the customer report for one of the alleged complainants states “customer satisfied with this service;” (4) there was a legitimate reason for the single customer complaint that Steward can recall — the customer wanted repairs done outside the service contract; (5) all of the Technical Managers had customer complaints and, to his knowledge, only Steward was singled out for reprimand on this issue; (6) a backlog in the service unit was not unusual and occurred every year; (7) all of the Technical Managers shared responsibility for the backlog, yet to his knowledge, no other Technical Manager was criticized; (8) Steward properly supervised his technicians, attempting to be flexible with Pandora because she had a runaway child at home, and placing each of the other two technicians on a PPI to improve their performances; (9) Steward cleaned the tractor yard as requested by Schweizer, although doing so was not his job responsibility; and (10) Steward asked to discuss the PPI extension with Schweizer, but Schweizer refused to meet with him and avoided communication and interaction.
 

 As further circumstantial evidence of age bias, Steward alleges that Schweizer singled out Steward for additional duties that were not his responsibility, including cleaning up the tractor yard and putting Steward in charge of the PDC process. According to Steward, the added duties created an insurmountable workload, as his responsibilities were already greater than those of the younger Technical Managers because he supervised more technicians. When Steward questioned Schweizer about the added responsibility, Schweizer responded, “Hell, you are old enough, you have been around long enough, you should handle this.” Steward contends that this comment, along with the fact that Steward was singled out for additional assignments, substantiates his claim of age discrimination.
 

 On June 26, 2001,
 
 [5]
 
 Schweizer performed another written follow-up evaluation addressing issues raised by the initial February 26, 2001 PPI. The June 26, 2001 follow-up PPI alleged the following performance related deficiencies: (1) Steward inappropriately handled two more customer complaints; (2) Steward failed to recruit technicians necessary to reduce the backlog; (3) two weeks after shipping a number of mowers to New York to alleviate the backlog in Wilmington, the Wilmington facility had a 70 order backlog; (4) to alleviate the backlog, Schweizer had to ask Steward’s technicians to work overtime on a Sunday. Steward did not participate in the Sunday overtime.
 

 Steward disputes the complaints raised in the June 26, 2001 follow-up PPI. Steward contends: (1) he did not inappropriately handle the customers listed in the PPI and specifically recalls addressing the problem of one of the identified customers; (2) Schweizer could not recall the nature of that customer’s problem and provided no documentation of the customer’s complaint; (3) Steward hired one individual, Morice Anderson, and was prepared to hire another individual, Ray Fleekinger,
 
 *DCCLXVI
 
 but was refused authorization to hire him because Sears “did not have the man hours;” (4) Steward disputes having a 70 order backlog; (5) Steward claims that a backlog occurred every year and that the backlogs were the responsibility of all the Technical Managers; (6) Schweizer never asked Steward to work the Sunday overtime to take care of the backlog, which Steward claims was consistent with Schweizer’s pattern of ignoring him.
 

 On July 2, 2001, Sears terminated Steward. According to Steward, Schweizer called him into his office. DeWit and Donna Desilets, Sears’ Human Resources Manager, were also present. Schweizer informed Steward of his decision to terminate him and told Steward that there was to be no discussion. Schweizer then escorted Steward out of the building through the customer service routing area, causing Steward significant humiliation after 23 years of service at Sears. Steward was fifty years old at the time of his discharge.
 

 On December 14, 2001, Steward filed a charge with the Equal Employment Opportunity Commission (“EEOC”) alleging that his termination was due to age discrimination. Steward received a right to sue letter from the EEOC dated September 26, 2002. Steward filed the instant action on December 6, 2002.
 

 III. STANDARD
 

 “[I]f the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law[,]” summary judgment should be granted. Fed.R.Civ.P. 56(c). The Supreme Court describes the summary judgment determination as “the threshold inquiry of determining whether there is the need for a trial — whether, in other words, there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party.”
 
 Anderson v. Liberty Lobby, Inc.,
 
 477 U.S. 242, 250, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). Therefore, “a motion for summary judgment must be granted unless the party opposing the motion can adduce evidence which, when considered in light of that party’s burden of proof at trial, could be the basis for a jury finding in that party’s favor.”
 
 J.E. Mamiye & Sons, Inc. v. Fidelity Bank,
 
 813 F.2d 610, 618 (3d Cir.1987).
 

 “[0]n summary judgment, the inferences to be drawn from the underlying facts ... must be viewed in the light most favorable to the party opposing the motion.”
 
 Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.,
 
 475 U.S. 574, 587-588, 106 S.Ct. 1348, 89 L.Ed.2d 538 (quoting
 
 United States v. Diebold, Inc.,
 
 369 U.S. 654, 655, 82 S.Ct. 993, 8 L.Ed.2d 176 (1962)). The party opposing summary judgment “must do more than simply show that there is some metaphysical doubt as to the material facts.”
 
 Id.
 
 at 586, 106 S.Ct. 1348. “If reasonable minds can differ as to the import of proffered evidence that speaks to an issue of material fact, summary judgment should not be granted.”
 
 Gelover v. Lockheed Martin,
 
 971 F.Supp. 180, 181 (E.D.Pa.1997).
 

 IV. DISCUSSION
 

 A. ADEA Claim
 

 The ADEA prohibits age discrimination in employment against any person over the age of forty. 29 U.S.C. § 623(a)(1). A plaintiff can sustain an age discrimination claim by presenting either direct or circumstantial evidence. When there is no direct evidence of discrimination, the plaintiff may establish discrimination through circumstantial evidence using the three prong burden-shifting analysis originally set forth in
 
 McDonnell Douglas Corp. v.
 
 
 *DCCLXVII
 

 Green,
 
 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973), a racial discrimination case.
 

 Under
 
 McDonnell,
 
 the plaintiff must first establish a
 
 prima facie
 
 case of age discrimination by showing: (1) that he is over 40; (2) that he is qualified for the position in question; (3) that he suffered an adverse employment decision; and (4) that he was replaced by a sufficiently younger person to permit an inference of age discrimination.
 
 Brewer v. Quaker State Oil Refining Corp.,
 
 72 F.3d 326, 330 (3d Cir.1995). If the plaintiff establishes a
 
 prima facie
 
 case of age discrimination,
 
 McDonnell
 
 then shifts the burden to defendant to produce evidence of a legitimate nondiseriminatory reason for the discharge. This burden is one of production, not persuasion.
 
 Id.
 
 If defendant offers a legitimate reason for the discharge, in order to survive summary judgment, plaintiff must submit evidence sufficient for a fact-finder either to “disbelieve the employer’s articulated legitimate reasons or to believe that an invidious discriminatory reason was more likely than not a motivating or determinative cause of the employer’s action.”
 
 Id.
 
 at 331 (quoting
 
 Fuentes v. Perskie,
 
 32 F.3d 759, 763 (3d Cir.1994)).
 

 1. Prima Facie Case under ADEA
 

 A. Replacement
 

 Sears argues that Steward cannot establish a prima facie case of age discrimination because Steward was not “replaced” as required under
 
 McDonnell Douglas.
 
 Sears argues that Steward’s responsibilities were merely redistributed among existing Technical Managers which, according to Sears, bars Steward’s ADEA claim.
 

 The Court concludes that Steward’s inability to show he was “replaced” is not fatal to his ADEA claim. The Third Circuit has addressed the issue of “replacement” in reduction in force (“RIF”) cases, holding that plaintiffs are not required to establish that they were replaced in order to establish a
 
 prima facie
 
 case under
 
 McDonnell Douglas. Duffy v. Wheeling Pittsburgh Steel Corp.,
 
 738 F.2d 1393, 1395 (3d Cir.1984). Because an RIF plaintiff would never be able to show age discrimination under such a strict approach, the court in
 
 Duffy
 
 modified the fourth prong of the
 
 McDonnell Douglas
 
 test to require only a showing that employees outside the protected class were treated more favorably. The “protected class” requirement was later dropped in
 
 Pivirotto v. Innovative Systems, Inc.,
 
 191 F.3d 344, 353 (3d Cir.1999).
 

 A number of courts have also modified the fourth prong of the
 
 McDonnell Douglas
 
 test in non-RIF cases where the discharged employee’s responsibilities were absorbed by other employees.
 
 See, e.g., Morrow v. American Bag Corp.,
 
 23 Fed.Appx. 450, 455 (6th Cir.2001) (modifying fourth prong of
 
 McDonnell Douglas
 
 test to require “additional direct, circumstantial or statistical evidence tending to indicate that the employer singled out the plaintiff for discharge for impermissible reasons.”);
 
 Hitt v. Harsco Corp.,
 
 356 F.3d 920, 924 (8th Cir.2004) (modifying fourth element to require a showing that “age was a factor in the employer’s decision to terminate.”) While using different language, these courts have generally required a plaintiff to proffer evidence that younger employees were treated more favorably, as opposed to evidence of replacement by a younger employee.
 

 This case does not involve an RIF. The Third Circuit has yet to address whether an employee can establish a
 
 pri-ma facie
 
 case in a non-RIF case where,
 
 inter alia,
 
 the employee’s duties are absorbed by other employees. That court has, however, held that “the nature of the required showing [under
 
 McDonnell
 
 Douglas] depends on the circumstances of
 
 *DCCLXVIII
 
 the case.”
 
 Id.
 
 In
 
 Pivirotto v. Innovative Systems, Inc.
 
 191 F.3d 344, 352 (1999), the court stated:
 

 The central focus of the inquiry in a case such as this is always whether the employer is “treating some people less favorably than others because of their race, color, religion, sex, or national origin.” The method suggested in
 
 McDonnell Douglas
 
 for pursuing this inquiry, however, was never intended to be rigid, mechanized, or ritualistic. Rather, it is merely a sensible, orderly way to evaluate the evidence in light of common experience as it bears on the critical question of discrimination.
 

 Id.
 
 (internal quotations and citations omitted).
 

 Based upon the rationale adopted by the Third Circuit in
 
 Pivirotto
 
 and
 
 Duffy,
 
 and decisions in other circuits modifying the fourth prong of
 
 McDonnell Douglas
 
 in non-RIF cases, this Court concludes that the fact that Steward was not “replaced” after his termination is not fatal to establishing a
 
 prima facie
 
 case of age discrimination. Steward can satisfy the fourth prong of
 
 McDonnell Douglas
 
 by
 
 offering
 
 evidence that younger employees were treated more favorably.
 

 The Court concludes that Steward has met this burden. Steward presented evidence that Schweizer singled him out for criticism and did not criticize younger employees who engaged in similar conduct, or were equally responsible for problems. For example, Steward claims he was criticized as a result of customer complaints, for two instances of backlogs, and for the GAP report, whereas younger employees were not. Steward also argues that he was singled out for extra responsibilities despite having the heaviest workload of the Technical Managers. Such evidence was largely corroborated by Carter’s deposition testimony. The Court concludes that this evidence is sufficient to establish more favorable treatment of younger employees and meets that part of the fourth prong of
 
 McDonnell Douglas.
 

 B. Sufficiently Younger Employees
 

 Sears argues that Steward cannot produce evidence that he was replaced by, or in this case, treated less favorably than employees that were sufficiently younger than Steward to permit an inference of age discrimination. According to Sears, the majority of Steward’s work was assigned to Carter, an employee only five years younger than Steward, an age difference not significant enough to support an inference of age discrimination.
 
 See Gutknecht v. SmithKline Beecham Clinical Labs., Inc.,
 
 950 F.Supp. 667, 672 (E.D.Pa.1996)(internal citations omitted). Moreover, Sears argues that the retention of Sipple, age 59, precludes an inference that Steward was discriminated against because of age.
 
 See, e.g., Brown v. McDonnell Douglas Corp.,
 
 113 F.3d 139, 142 (8th Cir.1997).
 

 In response, Steward claims that his work was divided among a number of younger Technical Managers, including Merkel, 34, DeWit, 34, Carter, 45, and an employee later hired to replace Carter, Russ Apple, age 42. Steward argues that the combined age differential between himself and all of the employees that assumed his duties after his termination is more than sufficient to establish a prima facie case of age discrimination.
 
 See Sempier v. Johnson,
 
 45 F.3d 724, 729-30 (3d Cir.1995) (combined differences of four years and ten years between age of dismissed employee and the two employees that assumed his responsibilities satisfies fourth prong of the
 
 McDonnell Douglas
 
 test). Steward also contends that the retention of Sipple, age 59, is not dispositive.
 
 See Reeves v. Sanderson Plumbing Prod
 
 
 *DCCLXIX
 

 ucts, Inc.,
 
 530 U.S. 133, 153, 120 S.Ct. 2097, 147 L.Ed.2d 105 (2000) (holding that employer’s retention of many managers over age 50, while relevant, was not dis-positive of an ADEA claim). According to Steward, not long after his termination, Sipple received a low score on a performance evaluation and thereafter volunteered for early retirement.
 

 The Court concludes that the combined age differential between Steward and the younger employees who were allegedly treated more favorably is sufficient to meet that part of the fourth prong of
 
 McDonnell Douglas. See Sempier,
 
 45 F.3d at 729-30. The fact that Sears retained Sipple is not dispositive of the age discrimination claim.
 
 See Reeves,
 
 530 U.S. at 153, 120 S.Ct. 2097.
 

 2. Legitimate Non-Discriminatory Reason for Discharge
 

 According to Sears, all of Steward’s alleged deficiencies can be distilled into one legitimate non-discriminatory reason for his termination: “Mr. Steward has demonstrated a lack of ownership of the responsibilities of Technical Manager at Sears Product Repair Services.” Defendant’s Mot. for Sum. J., at 16. In support of this contention, Sears offers as evidence,
 
 inter alia,
 
 Schweizer’s deposition testimony and affidavit, DeWit’s deposition testimony and affidavit, Steward’s February 21, 2000 written PPI, the written followups to the PPI, and Steward’s Notice of Termination.
 

 The Court concludes the above evidence is sufficient to meet Sears’s burden of producing evidence of a legitimate nondiscriminatory reason for the discharge under
 
 McDonnell Douglas.
 
 Thus, the burden shifts to Steward to submit evidence that the stated reasons for discharge were pretextual.
 

 3. Evidence of Pretext
 

 A plaintiff can demonstrate pretext by showing that a “defendant’s proffered reason is ‘merely fabricated justification for discriminatory conduct ... “either directly by persuading the court that a discriminatory reason more likely motivated the employer or indirectly by showing that the employer’s proffered reason is unworthy of credence.” ’ ”
 
 Siegel v. Alpha Wire Corp.,
 
 894 F.2d 50, 55 (3d Cir.1990).
 

 Steward makes three arguments to establish that Schweizer’s stated reasons for discharging Steward were a pretext for discrimination: (1) Steward’s long and positive work history; (2) Schweizer’s more favorable treatment of younger Technical Managers; and (3) the implausibilities and inconsistencies in Schweizer’s proffered reasons for Steward’s discharge.
 

 First, Steward points to his long and positive work history at Sears, in which he regularly received positive performance evaluations, pay increases, and merit bonuses. Steward offers evidence of positive evaluations from prior supervisors and coworkers. Additionally, Steward provides evidence that he had the highest productivity of all the Technical Managers in terms of service calls completed. In 2000, Steward completed 35, 272 service calls, Merkel 17,740 service calls, Carter 17,237 calls, and Sipple 9,947 calls. In 2001, up to the time of his termination, Steward completed 17,623 calls, Carter 9462 calls, Merkel 4707 calls, and Sipple 4707 calls. In the year he was terminated, Steward oversaw almost as many completed calls as the other three Technical Managers combined. Steward also argues that the merit bonus of $9,960 he received on March 15, 2001 refutes Schweizer’s contention that Steward’s performance was substandard.
 

 Next, Steward offers evidence that Schweizer treated him differently than the younger Technical Managers from the
 
 *DCCLXX
 
 time Schweizer began working at Sears’s Wilmington facility. Steward claims that Schweizer ignored him, took over his meetings with his technicians, avoided having meetings with him, and singled him out for extra assignments despite the fact that Steward had the heaviest workload among the Technical Managers. Steward’s claim of less favorable treatment is supported by Carter’s deposition testimony. See Carter Dep. at 17-19, 38, 41-42, 46^7.
 

 According to Steward, when he approached Schweizer about his workload, Schweizer further displayed age bias by stating “Hell, you are old enough, you have been around long enough, you should handle this.” Carter offers partial corroboration of this claim, testifying that Steward had expressed discomfort with an age-based comment allegedly made by Schweizer. Carter Dep. at 33.
 

 Finally, Steward offers evidence of inconsistencies and implausibilities in each of Schweizer’s proffered reasons for discharging Steward. For example, in response to Schweizer’s claim that Steward did not produce weekly GAP reports, Steward contends that he produced a report every week in collaboration with Carter and Sipple. On the other hand, Merkel never produced a GAP report and yet was never reprimanded and/or terminated for this failure. Carter corroborates both of these claims. Steward similarly refutes Schweizer’s claim that Steward did not hire sufficient personnel by citing his hiring of Morice Anderson and his attempt to hire Ray Fleckinger, which was not authorized by Sears. These claims are corroborated by Carter’s deposition testimony.
 

 Steward disputes Schweizer’s claim regarding a customer complaint by producing the customer record stating that the alleged complainant was satisfied with his service. Steward also denies responsibility for submitting vacation reports late. To the contrary, he argues that, while he was out of the office, Schweizer ordered Carter to move the contents of Carter’s and Steward’s shared office to a different location and that the vacation slips were lost during the move. Carter corroborates this claim.
 

 Steward offers a similar response to each of Schweizer’s performance-related charges. The Court concludes, however, that is it unnecessary to enumerate all such responses because plaintiffs are not required to
 

 cast doubt on each of proffered reason in a vacuum. If the defendant proffers a bagful of legitimate reasons, and the plaintiff manages to cast substantial doubt on a fair number of them, the plaintiff may not need to discredit the remainder. That is because the factfin-der’s rejection of some of the defendant’s proffered reasons may impede the employer’s credibility seriously enough so that a factfinder may rationally disbelieve the remaining proffered reasons, even if no evidence undermining those remaining rationales in particular is available.
 

 Fuentes v. Perskie,
 
 32 F.3d 759, 765 (3d Cir.1994).
 

 In summary, Steward has presented evidence of: (1) his positive performance evaluations and merit bonuses; (2) less favorable treatment than younger Technical Managers; and (3) inconsistencies and implausibilities in Schweizer’s proffered reasons for Steward’s discharge. Carter’s deposition testimony substantially corroborates Steward’s claims. The Court concludes that this evidence is sufficient for a factfinder to disbelieve Sears’s reasons for termination or to believe that the reasons were a pretext for invidious discrimination.
 

 
 *DCCLXXI
 
 4. Sears’s Objections
 

 The Court rejects Sears’s contention that Steward’s responses amount to nothing more than a subjective interpretation that he was doing a good job. According to Sears, such a response is not relevant because it does not address whether Schweizer honestly believed the reasons given for Steward’s termination.
 
 See Billet v. CIGNA Corp.,
 
 940 F.2d 812, 825 (3d Cir.1991).
 

 The Supreme Court has rejected the argument that direct evidence of the employer’s mental state is required to sustain an ADEA claim. The Court explained that the burden shifting test of
 
 McDonnell Douglas
 
 is employed precisely because “there will seldom be ‘eyewitness’ testimony as to the employer’s mental processes.”
 
 Reeves v. Sanderson Plumbing Products, Inc.,
 
 530 U.S. 133, 140, 120 S.Ct. 2097, 147 L.Ed.2d 105 (2000). Thus, the Court in
 
 Reeves
 
 held:
 

 Proving the employer’s reason false becomes part of (and often considerably) assists the greater enterprise of proving that the real reason was intentional discrimination .... In appropriate circumstances, the trier of fact can reasonably infer from the falsity of the explanation that the employer is dissembling to cover up a discriminatory purpose. Such an inference is consistent with the general principle of evidence law that the factfinder is entitled to consider a party’s dishonesty about a material fact as affirmative evidence of guilt.
 

 Id.
 
 (internal quotations and citations omitted).
 

 Further, Steward cites specific examples to undermine the credibility of Schweizer’s criticisms. In
 
 Brewer v. Quaker State Oil Refining Corp.,
 
 72 F.3d 326, 331 (3d Cir.1995), the court held that an employee’s testimony regarding specific examples of “errant or misplaced criticism” is more than just a “subjective opinion of his performance” and is thus probative of whether or not the reasons offered by the employer for the employee’s discharge were pretextual.
 

 The Court also rejects Sears’s arguments that Steward’s positive performance evaluations are not relevant to whether the reasons for the termination are pretextual. Sears contends that the evaluations are not probative because Sears did not rely on poor performance evaluations for the termination. However, evidence regarding Steward’s productivity as a Technical Manager is probative of whether Steward properly managed his technicians and whether Steward had poor leadership over his technicians — two reasons which were given by Schweizer for Steward’s termination. Moreover, Sears admits that the merit bonuses are based in part on a unit’s productivity. This evidence is relevant because “a factfinder could find it implausible” that an employer would fire an employee when that employee “was successful in the sole area identified by the [employer’s] own incentive program.”
 
 Id.
 

 Lastly, the Court rejects Sears’s argument that Schweizer’s alleged “you’re old enough” remark cannot be considered probative of age discrimination. Sears claims that the remark is a “stray remark by a ... decisionmaker unrelated to the decision process” which is “rarely given great weight, particularly if ... made temporally remote from the date of the decision.”
 
 Ezold v. Wolf, Block, Schorr & Solis-Cohen,
 
 983 F.2d 509, 545 (3d Cir.1993). The Court concludes that a reasonable jury could find that the comment, combined with evidence of dissimilar treatment of younger employees by Schweizer, was circumstantial evidence of age discrimination.
 
 Brewer,
 
 72 F.3d at 334 (statements subject to competing interpretations should be submitted for a jury’s consideration).
 

 Based on the entire record, the Court determines that there are genuine issues
 
 *DCCLXXII
 
 of material fact with regard to each prong of the
 
 McDonnell Douglas
 
 test. Therefore, that part of Defendant’s Motion for Summary Judgment which addresses this aspect of the case is denied.
 

 5.Liquidated Damages
 

 Under the ADEA, liquidated damages are available to a plaintiff who proves that the defendant “willfully” violated the ADEA. 29 U.S.C. § 626(b). The Supreme Court has held that, for purposes of the ADEA, an act of discrimination is “willful” if “the employer either knew or showed reckless disregard for the matter of whether its conduct was prohibited by the ADEA.”
 
 Trans World Airlines, Inc. v. Thurston,
 
 469 U.S. 111, 126, 105 S.Ct. 613, 83 L.Ed.2d 523 (1985). The wilfulness analysis is fact-specific and must be conducted on a case-by-case basis. Usually, “wilfulness is a factual question requiring an examination of the employer’s ‘state of mind, knowledge, intent and belief regarding the propriety of [its] actions,’ ” and as such, summary judgment is not appropriate in cases in which an employee is able to proffer some evidence of wilfulness.
 
 Harter v. GAF Corp.,
 
 967 F.2d 846, 852 (3d Cir.1992) (internal citations omitted).
 

 Steward argues that a jury could infer wilfulness from the following facts: Schweizer’s more favorable treatment of younger Technical Managers; Steward’s good employment record; the merit increases Steward received from 1998 to 2001 as a Technical Manager; the bonuses Steward received as a technical manager including the one he received in March 2001; the January 2001 “met expectation” record of Steward’s performance review; “the paper trail” efforts of Schweizer
 
 [6]
 
 to get rid of Steward; the comment by Schweizer of “hell you are old enough, you have been around long enough, you should handle this;” and the manner of Steward’s termination — Schweizer escorting Steward out of the building.
 

 The Court concludes that Steward has met his burden of providing some evidence of wilfulness under
 
 Harter. Id.
 
 Thus, on the current state of the record, Sear’s Motion for Summary Judgment on plaintiffs claim for liquidated damages is denied without prejudice to defendant’s right to raise the issue, and any other appropriate defense, at trial.
 

 6. Punitive and Compensatory Damages For Pain and Suffering
 

 Neither punitive damages nor damages for pain and suffering are recoverable under the ADEA.
 
 Baur v. M & M/Mars
 
 2001 U.S. DIST LEXIS 24162, *24-27 (E.D.Pa. October 22, 2001). Thus, Defendant’s Motion for Summary Judgment is granted as to plaintiffs claims under the ADEA for punitive damages and damages for pain and suffering, humiliation and embarrassment.
 

 7. DHRA Claim
 

 Plaintiff has agreed to withdraw his claim under the DHRA. Thus, Defendant’s Motion for Summary Judgment is granted as to plaintiffs claim under the DHRA.
 

 Y. CONCLUSION
 

 For the foregoing reasons, this Court grants Defendant’s Motion for Summary Judgment as to plaintiffs claims under the ADEA for punitive damages and damages for pain and suffering, humiliation and embarrassment. The Court also grants Defendant’s Motion for Summary Judgment as to plaintiffs claim under the Delaware Human Relations Act. Defendant’s Motion
 
 *DCCLXXIII
 
 for Summary Judgment is denied in all other respects.
 

 [1]
 

 . Steward alleges different ages for Carter throughout his Brief in Opposition to Defendant's Motion for Summary Judgment, including: age 45 on p. 31, age 46 on p. 38, and age 44 on p. 47. In his deposition, Carter states that his date of birth is March 27, 1956, which would make him 45 at the time of Steward’s termination. Sears’ Motion also assumes that Carter was 45 when Steward was terminated.
 

 [2]
 

 .According to Sears's February 21, 2000 performance review of Steward, the rating scale for employees is as follows:
 

 5 = Far exceeds expectations;
 

 4 = Consistently exceeds expectations;
 

 3 = Consistently meets expectations; Solid, value-added performance;
 

 2 = Some expectations met;
 

 1 = Expectations not met; Unacceptable.
 

 See Plaintiff's Brief in Opposition to Motion for Summary Judgment, Exhibit 24.
 

 [3]
 

 . The GAP meeting was to discuss weekly GAP report, which tracked the difference or gap between the hours of productivity for the entire Wilmington Service Unit.
 

 [4]
 

 . The PDC process was a plan by Sears for parts to be transferred from the individual service units to a main storage/processing area in Royersford, Pennsylvania.
 

 [5]
 

 . Sears alleges that the 90-day follow up to the PPI was performed on May 29, 2001. For purposes of the Motion for Summary Judgment, the Court accepts the date alleged by Steward.
 

 [6]
 

 . Steward mentions the “paper trail” argument for the first time in addressing his position on wilfulness. He does not explain the argument. Accordingly, the Court does not rely on the paper trail argument in deciding the wilfulness issue.